IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CHANDRA EVANS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 2-09-CV-02491-SHM |
| | § | |
| WALGREENS COMPANY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSETO DEFENDANT'S OBJECTIONS TO
MAGISTRATE JUDGE TU M. PHAM'S MAY 16, 2011, ORDER**

Plaintiff, CHANDRA EVANS, pursuant to Federal Rules of Civil Procedure 72(a) files her Response to Defendant's Objections ("Defendant's Objections") to Magistrate Judge Tu Pham's May 16, 2011 Order (the "May 16, 2011, Order") denying Defendant's Motion to Strike Specific Statements in Plaintiff's Affidavits ("Defendant's Motion to Strike) and shows the Court as follows:

I.   **SUMMARY OF ARGUMENT**

Misrepresentation and omission of facts have become commonplace for Defendant and, true to form, in Defendant's Objections it misrepresents the record and omits key facts in its attempt to persuade the Court that Judge Pham got it wrong on Defendant's Motion to Strike. The fact of the matter is that Judge Pham made a thorough review of the record before him, applied the appropriate legal principles, and formed his conclusions only after properly applying the law in this Circuit to the facts. Defendant, however, resorts to attempting to win its case by misrepresenting Plaintiff's statements and putting its own spin on what Plaintiff "must have meant" when she was questioned by Defendant's counsel. During Judge Pham's review of the affidavits and the allegedly contradictory deposition testimony, he concluded that clearly there

1

were no directly contradictory statements. Additionally, Judge Pham concluded, consistent with the principles espoused in this Court's new Local Rule 56.1(b) and *Franklin v. Kellogg*[1] that Plaintiff's statement of additional facts submitted with her response to Defendant's motion for summary judgment is permitted. Therefore, although Defendant may not agree with Judge Pham's rulings, the ruling in the May 16, 2011 Order is within his discretion pursuant to the powers vested in him by 28 U.S.C. §636, FED. R. CIV. P. 72, and rules of this Court.

Accordingly, Plaintiff requests the Court deny and overrule Defendant's Objections to Judge Pham's May 16, 2011, Order.

## II.      ARGUMENT AND AUTHORITIES

As mentioned above, Defendant has been thoroughly heard on the issues presented in their baseless Objections and, despite Plaintiff's contention that Defendant's objections are contrived, the issued raised by Defendant have already been addressed and ruled upon by the Magistrate Judge. Although Defendant argues, disingenuously, that the Magistrate Judge misapplied some unspecified law from this Circuit, it is clear that Defendant's arguments are, in reality, arguments as to the factual components of Judge Pham's conclusions. Nevertheless, it is also unmistakably clear that in his analysis Judge Pham correctly applied the controlling law in this Circuit. Accordingly, Defendant's Objections should be overruled.

### A.   BECAUSE THE MAGISTRATE JUDGE'S MAY 16, 2011, ORDER IS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW, IT SHOULD NOT BE DISTURBED.

The court reviews decisions of the magistrate judge in nondispositive matters pursuant to Rule 72(a), which provides that the court shall modify or set aside any portion of a magistrate judge's order *only if found to be clearly erroneous or contrary to law*. "The clearly erroneous standard applies to the factual components of the magistrate judge's decision." *United States v.*

---

[1] *Franklin v. Kellogg Co.*, No. 08-2268, 2009 WL 6093442, *1 (W.D.Tenn. July 20, 2009)(McCalla, C.J.).

*Johnson*, 488 F.3d 690, 695 (6th Cir.2007). "[T]he district court may not disturb a factual finding of the magistrate judge 'unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)); *see also, United States v. Brown,* 449 F.3d 741, 744 (6th Cir.2006). "If a magistrate judge's 'account of the evidence is plausible in light of the record viewed in its entirety, 'a district judge may not reverse it.'" *Bessemer,* 470 U.S. at 573-74.

### 1. The Magistrate Judge's Opinions on the Statements at Issue Are Based on Factual Findings

As Defendant concedes in Defendant's Objections, when determining whether to strike a post-deposition affidavit, the court "must first determine whether the affidavit directly contradicts the nonmoving parties' prior sworn testimony." See, Page 2 of Defendant's Objections, citing *Aerel, S.R.L. v. PCC Airfoils, L.L.C*., 448 F.3d 899, 908 (6th Cir.2006). As to each of the allegedly contradictory statements, the Magistrate Judge employed the proper law – he first asked whether the statements in the affidavits directly contradicted Dr. Evans' deposition testimony. In each instance, the Magistrate Judge concluded that there were no direct conflicts.

Having determined that there were no direct contradictions, the Magistrate Judge then considered whether the affidavits constituted an attempt to create a sham fact issue. This is the proper analysis in this Circuit. *See, Ariel, S.R. L.*, 448 F.3d at 908. Once again, the Magistrate Judge made findings that there was no evidence of any attempt to create a sham fact issue. In making this determination, the Magistrate Judge makes clear that he considered "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the

affidavit attempts to explain." See, May 16, 2011 Order at page 4 (citing, *Aerel, S.R.L.*, 448 F.3d at 908-09. Therefore, it is clear that the Magistrate Judge made determinations that are clearly based on the law as followed in this Circuit. Having properly applied the law, he reached the following conclusions:

> **a. The Magistrate Judge determined that the statements in the Affidavits relating to Walgreen's coercion of Plaintiff do not contradict her deposition testimony.**

Although Walgreen's goes to great lengths to misrepresent the true facts here, there are a few undisputed facts that bear noting for purposes of this response. One, it is undisputed that Puamuh Ghogomu, ("Ghogomu") Walgreen's lawyer, spoke with Dr. Evans, an unrepresented party, while she was involved in a very volatile and adversarial legal dispute with his employer. Two, it is undisputed that Ghogomu spoke with Dr. Evans several times during the process; Three, at the time Plaintiff attempted to report to Walgreen what she understood was discrimination and retaliation, she believed she was contacting Walgreen's "employee relations department," not Walgreen's legal department;[2] Four, Walgreen employees are led to believe they can contact the employee relations department "without fear of retaliation;"[3] Five,

---

[2] The following are excerpts from the deposition of Chandra Evans:
  (Page 22:9-18)
  Q: Tell me about that, how did you get Mr. Ghogomu – come about speaking with him?
  A: How did I get his name.
  Q: What was the protocol that you followed?
  A: Previously it had something to do with this, his name was given. That's the person I was attempting to contact that was **an employee relations referral**, and I guess the call was – call was deferred to Mr. Ghogomu.

[3] The following are excerpts from the deposition of Puamuh Ghogomu:
  (Page 44:2-24)
  Q: --who does this document say the employee should report to?
  A: It says that they can – it says, employees who have experienced or observed discrimination should report their complaint to their choice of store manager, district manager, loss prevention specialist, loss prevention hotline, employee relations department.

4

Walgreen, through Ghogomu and Walker communicated to Plaintiff that she was "obligated" to cooperate with the "investigation" and that it was in her "best interests" to do so;[4] Six, prior to speaking to the employee relations department, Plaintiff had made up her mind she would not speak with Walker[5] and did not do so until Ghogomu advised her that she "was obligated to" meet with Walker;[6] Seven, prior to Plaintiff providing the written statement, Ghogomu told

---

    Q:    So if an employee believes that they've been discriminated against, they have the option of who to report it to; is that right?
    A:    That is correct. Yes.
    Q:    **So if an employee feels like they've been discriminated against and if they call you up, then that's proper?**
    A:    **Yes. The – purpose here is, you choose. It's a choice. If you – whoever you're – whoever you're most comfortable reporting that complaint to.**
(Page 45:8-24)
    Q:    And, in fact, it also – this document goes on to talk about harassment and retaliation, doesn't it?
    A:    **It references the fact that – that if they have concerns regarding discrimination or harassment, they can direct those to employee relations without fear of retaliation**.
    Q:    They would direct them to you; is that right?
    A:    I am part of employee relations department and any others in my department.

[4] The following are excerpts from the deposition of Chandra Evans:
(Page 28:9-22)
    Q:    Tell me about the third call [with Ghogomu]?
    A:    I presumed he had spoken with someone. He had been speaking with someone at the district level, and I was told that it would be **in my best interest** to speak with Steve Walker, that there would be no one available for me to talk with other than Steve Walker.
    Q:    Okay. Did you call him or did he call you the third time?
    A:    I don't recall. I would like to say he called me, but I don't recall.
    Q:    **He told you that you should speak with Steve Walker?**
    A:    **Yes.**

[5] The following are excerpts from the deposition of Chandra Evans:
(Page 25:24 – 26:9
    Q:    I asked you what was said and you said the nature of the events and I asked you about that, but can you think of anything else that you didn't tell me awhile ago about what happened?
    A:    I told him – he asked me why I did not want to speak with Steve Walker, and I enlightened him on my previous experience with Steve Walker, and that did come up in our second conversation.

[6] The following are excerpts from the deposition of Puamuh Ghogomu :
(Page 84:2-21 and 80:7-17)
    Q:    **What – what did you tell Dr. Evans to do, as far as it relates to the investigation that was being conducted?**

5

Plaintiff about alleged "facts" he allegedly had already uncovered;[7] and Eight, neither Ghogomu[8] nor Walker[9] informed Plaintiff that they were investigating whether to terminate her, when she thought they were investigating her protected complaints.

---

| | | |
|---|---|---|
| A: | **I can't remember every single thing that we talked about, but I know that I told her that she needed to cooperate with the investigation and give her side of the story.** | |
| Q: | And you told her that she had an obligation to do that, didn't you? | |
| A: | Yeah. I told her that we, Walgreens, the company needs to get your side of the story with respect to the concerns and issues that had been raised. | |
| Q: | Well, you told her she had an obligation to do that, didn't you**?** | |
| A: | I don't know if I used the word obligation, **but I told her that she should – <u>my – recommendation</u> to her certainly was, you need to cooperate, you need to talk to them** and give your side of the story**.** | |
| | | |
| Q: | And at some point, you called her back, didn't you**?** | |
| A: | **At some point I did speak to her again**. | |
| Q: | Why did you call her back; what was the purpose of that call. | |
| A: | I believe the next time I called her back was to tell her that Jake Tibbe was going to be a witness to her interview with loss prevention. | |
| Q: | Didn't Ms. Evans, at some point, tell you that she did not want to speak with Mr. Walker? | |
| A: | Yes she did. | |

The following are excerpts from the deposition of Chandra Evans:

   (Depo at page 101:1-3)
| | | |
|---|---|---|
| Q: | Did they request that you put something in writing and send it to them? |
| A: | Yes, they asked me for a statement. |

---

[7] The following are excerpts from the deposition of Chandra Evans:
(Page 24:23 – 25:1)
  Q:   Do you recall anything else that Mr. Ghogomu said during the conversation?
  A:   He just repeated some things that he had been told by Mr. Walker or whoever he had spoken with.
(Page 195:1-6)
  Q:   Okay. All right, did he share the information he had with you?
  A:   He repeated the facts.
  Q:   What facts did he repeat?
  A:   The facts that he just repeated out of someone else's statement.
  Q:   Someone who he had interviewed said that you said this**?**
  A:   **Yes.**

[8] The following are excerpts from the deposition of Puamuh Ghogomu :
(Page 54:12-22 and 88:13-25)
  Q:   Sir, when was the first time you heard Dr. Evan's name?
  A:   Sometime shortly before her – her termination, which was in December of 2007.

6

Based on these facts, it is incredulous that Defendant would contend that Ghogomu's conduct could not have been coercive to Dr. Evans, who was told that she was obligated to provide a written statement. It was also clear to Plaintiff that Ghogomu expected that Plaintiff's statement would include the information Ghogomu discussed with her during his three telephone calls with her. This is especially understandable considering Ghogomu told Plaintiff it was in her <u>best interests</u> to meet with Walker and prepare this written statement. Defendant also cannot refute that Plaintiff was of the belief that she would get to keep her job if she "took Ghogomu's

---

| | |
|---|---|
| Q: | How did you hear her name? |
| A: | I was apprised by management of the situation involving Ms. Evans. |
| Q: | **You were apprised at – that – of what was happening?** |
| A: | **I was apprised that she was the subject of an investigation.** |
| Q: | Did you tell Dr. Evans that when you talked – when she called you, **did you tell her that the investigation that was being conducted was being conducted to determine whether she should be fired?** |
| A: | **No, I did not tell her**. |
| Q: | But you – you were aware that the investigation that was being conducted was being conducted to determine whether the allegations against her were sufficient to fire her; you were aware of that, weren't you. |
| A: | I was aware that she was the subject of an investigation with respect to her conduct. |

(Page 89:8-23)

| | |
|---|---|
| Q: | So at the time you talked to Dr. Evans, you were aware that an investigation was being conducted on her that could lead to her being disciplined or terminated? |
| A: | That's correct. |
| Q: | And you didn't tell her that? |
| A: | No. I did not apprise her that I was talking to anybody else. |
| Q: | **No, that – that wasn't my question. My – my question is – is at the time you talked to Dr. Evans, you knew that y'all were conducting an investigation to determine whether she should be disciplined or terminated. My question is: Despite knowing that, you didn't tell Dr. Evans that, did you?** |
| A: | **No, I did not tell Ms. Evans.** |

[9] The following are excerpts from the deposition of Steve Walker
(Page 50:3-14)

| | |
|---|---|
| Q: | And at the time y'all talked to Dr. Evans, did you tell her that y'all were conducting an investigation that could potentially lead to her being terminated from Walgreens**?** |
| A: | I did not specifically use those words**.** |
| Q: | And at the time you asked Dr. Evans to give a written statement to you, did you tell her that y'all were investigating some conduct that could potentially lead to her being fired by Walgreens? |
| A: | No. |

7

advice" and cooperated with the two men with whom Ghogomu told her she had to meet. However, the salient point here is that Dr. Evans was never asked at her deposition "why" she took Ghogomu's advice. She was not asked "why" she provided the written statement. In fact, even Defendant concedes in Defendant's Objections at page 3 that "when a plaintiff is asked 'generally' about a conversation….the plaintiff is under no obligation to volunteer the information and should not be prevented from providing detail in a later affidavit." That is the situation here, where Walgreen's counsel never asked Plaintiff why, only after her conversation with Ghogomu, did she go ahead and meet with the investigators and provide a written statement. It is, therefore, not erroneous for the Magistrate Judge to have concluded, as he did, that nothing in the affidavits directly conflict with Dr. Evans' deposition testimony.

### b. The *Tiller* case, cited by Defendant, is clearly inapposite the facts of the instant case.

In its efforts to argue that the Magistrate Judge made errors in his Order, Defendant references the unpublished opinion of *Tiller v. 84 Lumber Co.*, 886 F.2d 1316 (6th Cir. Oct. 10, 1989). However, *Tiller* is unavailing to this Defendant. First, unlike *Tiller*, in the present case there are no statements in affidavits that are directly inconsistent with prior deposition testimony. Two, the deposition in *Tiller* did not contain internal statements that were, in fact, consistent with the later affidavit. Three, *Tiller* did not involve affidavit testimony on subjects that were not sufficiently explored during the deposition. Four, *Tiller* did not involve vague and ambiguous questions during a deposition that the affidavits seek to explain. Finally, *Tiller* did not involve affidavit testimony that clearly supports the earlier deposition testimony. Because the facts and arguments in the present case are diametrically different than those in *Tiller*, *Tiller* simply has no application here.

    **c. The Magistrate Judge correctly determined that the statements in the affidavits relating to promises and contracts do not contradict Plaintiff's deposition testimony.**

  Once again, by purposefully ignoring other statements in Dr. Evans' deposition transcript, Walgreens misrepresents the existence of alleged contradictions between Dr. Evans' deposition testimony and her affidavits.  If this Court examines the deposition excerpts in their entirety, the way the Magistrate Judge did, it will be clear that there are no contradictions regarding Dr. Evans' reliance on conversations she had with Walgreens, which convinced her to leave North Carolina and move to Memphis to work for Walgreens in Memphis for a period of at least three years.  In fact, the Magistrate Judge also correctly concluded that the testimony in Plaintiff's deposition "supports the statements in her affidavits."  In reaching this conclusion, the Magistrate Judge reviewed the following testimony:

(Page 146:20 – 147:2)

  Q: Okay.  I want to go back just a moment to make sure I fully understand.  We talked earlier about you coming to Memphis and talked to Mr. Hoover and you actually I guess, flew to Memphis and visited for a weekend; is that right, before you came?

  A: Yes**.**

(Page 150:4-10)

  Q: Let me try to rephrase it.  I guess in terms of an offer of employment, did Mr. Hoover make you an offer of employment in Memphis?

  A: We talked about a lot of things.

Page 152:17 – 154: 11)

  Q: Okay.  With respect to, I guess, moving from North Carolina to Memphis were you provided with some funds to help you move by Walgreens?

  A: Yes.

  Q: Is that something you had talked to Mr. Hoover about?

9

A: It probably came up in conversation?

Q: Do you remember any specifics about a discussion with Mr. Hoover **about getting money for relocation**?

A: I expected to be working <u>for three years</u>.

Q: Okay, why was that?

A: Did you say why was that?

Q: Yes, why did you expect to be working for three years?

A: **That was our discussion.**

Q: Okay. That's a discussion with Mr. Hoover?

A: **Yes**.

Q: Well, tell me about it. I mean I want you to tell me as specifically as you can how that came up; is that something – did you bring it up, did he bring it up?

A: I don't recall who brought it up.

****

Q: Well, in terms of the specific exchange of words between you and Mr. Hoover about that?

A: I expected to be employed by Walgreens in Memphis <u>for three years</u>. Those were the specifics that I recall**.**

Q: Is that what you told him?

A: No, I did not tell him that.

Q: **Okay. Well, I guess where would you have gotten the expectation that you would have been employed by Walgreens in Memphis <u>for three years</u>?**

A: **From him.**

(Page 163:2-4)

Q: Did he [Hoover] say you would [sic] working in the east district [in Memphis]?

A: **Yes**.

****

(Page 163:18-22)

> Q: With respect to the, I guess working in the east Memphis district when you arrived in Memphis, did you work in the east Memphis district stores?
>
> A: **Yes.**

(Page 163:5-10)

> Q: Anything else that would relate to that paragraph there in the complaint that Mr. Hoover told you?
>
> A: **I mean after that weekend I was <u>pretty much sold</u>.** I don't remember any more specifics.

This deposition testimony plainly demonstrates that Walgreen's representative, Eugene Hoover, made oral representations to Plaintiff, who made her final decision to move to Memphis only after specific promises were made to her. In these circumstances, courts have refused to strike the affidavit testimony. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir.1980)(when "the alleged inconsistency created by the affidavit existed within the deposition itself," the affidavit should be accepted as summary judgment evidence). Finally, during her deposition, Plaintiff never stated that Hoover informed her that she would have to repay any compensation provided to her to help her move to Memphis. Accordingly, as the Magistrate Judge concluded, there are no contradictory statements.

        **d.    The Magistrate Judge correctly determined that statements in the affidavits that confirm that Dr. Evans did not sign the document at issue do not contradict deposition testimony.**

After carefully reviewing the testimony at issue, the Magistrate Judge concluded that there were no inconsistent statements between Dr. Evans' deposition testimony and her affidavit testimony as to whether she ever signed documents with Walgreen. As discussed in Dr. Evans' response to Walgreen's motion to strike, the alleged contradiction of testimony was manufactured by Defendant's counsel through his tortured phrasing of questions during Plaintiff's deposition and the misapplication of her responses. What is important to first note is

that there were four (4) written employment documents that were referenced by Defendant during Dr. Evans' deposition. Two of the documents are dated in 2004 and purportedly contain "written" signatures. However, neither of these documents obligates Plaintiff to "repay" Walgreen nor establishes that Walgreen had any right to unilaterally terminate Plaintiff **and** at the same time request that she repay the relocation money she received to move to Memphis. As an aside, the application for employment (Exhibit 4) is illusory and not supported by consideration.

The remaining documents (the relocation documents) do not contain a written signature. Using sleight of hand, however, Defendant tries to twist Plaintiff's deposition testimony to create a contradiction between Dr. Evans' deposition testimony and the affidavit on this subject. Reproduced below is Plaintiff's deposition testimony regarding two of these documents (Deposition Exhibits 3 and 4):

(Page 76:13 – 77:2):

    Q:    Ms. Evans, I have handed you a document marked Exhibit 3 and at the very top it says pharmacist incentive program for year 2005-2006, terms of incentive payment. Do you recall signing on the computer or however this document?

    A:    **NO.**[10]

    Q:    Okay. Did you receive a copy of this document?

    A:    No.

    Q:    Do you know that you didn't or you don't remember?

    A:    I don't remember.

(Page 77:16-24):

    Q:    Okay. All right. Do you recall ever signing any agreements with Walgreens?

    A:    I don't recall.

---

[10] When Plaintiff responded "No," she was clearly responding that she did not sign this document.

12

> Q: You don't recall signing any agreements for contracts at all with Walgreens?
>
> A: I don't recall.
>
> Q: When you say you don't recall, does that mean you don't remember?
>
> A: I don't recall.

Later in the deposition, Defendant's counsel handed Plaintiff Exhibit 4 (that appeared to be over six years old), which supposedly has a signature on it. Here is a portion of the testimony regarding this document:

(Page 78:5-20):

> Q: Okay. All right, also too, let me mark this as another exhibit. Mark that as Exhibit 4, please.
>
> Q: Ms. Evans, do you recall filling out this application for employment with Walgreens?
>
> A: Six years ago, I don't remember.
>
> Q: Okay, well, just looking at it, some of the basic information on there, does this look to be information about you that would be accurate?
>
> A: Yes, from what I have read, yes.

The document with a signature on it (Exhibit 4) is not the incentive document (Exhibit 3) Defendant contends represents the repayment agreement in dispute. Plaintiff's first response reproduced above indicates that she DID NOT sign the relocation document (Exhibit 3). Later, when Defendant's counsel tried to pool all of these documents together (the signed and unsigned ones) to ask his questions, Plaintiff simply responded that she did not recall whether she had signed "some" document. She never recanted her testimony in the deposition that she <u>did not</u> sign the relocation document (Exhibit 3).

Furthermore, following her inspection of the application of employment (Exhibit 4) and subsequent review of correspondence in this matter, Plaintiff recalled that the first time she saw

13

the alleged agreement with the checked box (Exhibit 3) was when this document was produced by Defendants during the course of this litigation. Therefore, her affidavit testimony simply reiterates her earlier testimony that she did not sign Exhibit 3, the relocation document, "on the computer or however." Moreover, her subsequent review of correspondence produced by Defendant's counsel in this matter confirmed that the first time she saw the relocation document was during this litigation. In essence, as the Magistrate Judge concluded, there is nothing in Plaintiff's affidavit that is inconsistent with her deposition testimony on this subject.

        **e.**       **The Magistrate Judge correctly determined that the statement in the affidavit regarding Walgreens replacing Dr. Evans with a Caucasian employee does not contradict Plaintiff's deposition testimony.**

The record is clear that Plaintiff acquired information later regarding the person who replaced her as a pharmacist in the store where she worked. The law is clear that in instances where an affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence, the affidavit is properly accepted as summary judgment evidence. *Law Co.,* 577 F.3d at 1170; *Aerel, S.R.L.*, 448 F.3d at 908-09. Indeed, the evidence from Walgreen's corporate representative cannot contradict this testimony. Since there is nothing in Plaintiff's affidavit that is inconsistent with her deposition testimony on this subject and since this testimony supplements Dr. Evans' previous testimony, the Magistrate Judge's determination that there is no direct contradiction is correct.

        **B.**       **BECAUSE THE LAW IN THIS COURT AND LOCAL RULE ALLOW PLAINTIFF TO SUBMIT ADDITIONAL STATEMENTS OF FACT, THE MAGISTRATE JUDGE'S MAY 16, 2011, ORDER ON THIS ISSUE SHOULD NOT BE DISTURBED.**

Judge Pham concluded, consistent with the principles espoused in this Court's new Local Rule 56.1(b) and *Franklin v. Kellogg*, that Plaintiff's statement of additional facts in her response

to Defendant's motion for summary judgment is permitted. Accordingly, the Magistrate Judge committed to error in his application of these authorities to the facts in this case.

### III.   CONCLUSION

Contrary to Defendants' contention, the Magistrate Judge applied the correct law to the facts of this dispute. In fact, it is telling that the Magistrate Judge's Order contains citation to the same controlling cases that Defendant cites in its original motion to strike and its objections. There is no doubt that the Magistrate Judge relied on the proper legal principles and applied those principles consistent with the overriding objectives of those authorities. In the end, the record is clear that there are no inconsistencies between Plaintiff's deposition testimony and her affidavits. The record is equally clear that, in rendering his opinion, the Magistrate Judge correctly applied the law in this Circuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court overrule each of Defendant's Objections, deny all other relief requested in Defendant's Objections and grant Plaintiff such other and further relief, in law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

/s/Aubrey "Nick" Pittman
AUBREY "NICK" PITTMAN
KRISTIN KAY SCHROEDER

**THE PITTMAN LAW FIRM, P.C.**
100 Crescent Court
Suite 700
Dallas, Texas 75201-2112
214-459-3454
214-853-5912 – fax
pittman@thepittmanlawfirm.com

/s/Darrell J. O'Neal
DARRELL J. O'NEAL (BPR #20927)

**LAW OFFICES OF DARRELL J. O'NEAL**
2129 Winchester Road
Memphis, Tennessee 38116
(901) 345-8009
(901) 345-8014 - fax
domemphislaw@aol.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2011, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Western District of Tennessee, Western Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

       /s/ Aubrey "Nick" Pittman
    AUBREY "NICK" PITTMAN