```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF TENNESSEE
                  WESTERN DIVISION
```

_____

CHANDRA EVANS,                      )
                                    )
     Plaintiff,                     )
                                    )
v.                                  )
                                    )   No. 09-CV-2491 Ma/P
WALGREEN COMPANY,                   )
                                    )
     Defendant.                     )

_____

## REPORT AND RECOMMENDATION
_____

Before the court by order of reference is defendant Walgreen Company's ("Walgreens") Motion for Sanctions Under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11 Motion"). (D.E. 72.) The court submits the following proposed findings of fact and conclusions of law, and recommends that the motion be denied.[1]

---

[1]The district judge referred this motion as well as Evans's related Motion for Sanctions (D.E. 50) to the magistrate judge for determination. Evans's Motion for Sanctions, which alleged that Walgreens's in-house counsel and its trial attorneys violated the Tennessee Rules of Professional Conduct, was a non-dispositive motion which the magistrate judge had authority to decide by order (as opposed to a report and recommendation). See McCans v. City of Truth or Consequences, 360 F. App'x 964, 966 n.3 (10th Cir. 2010); United States v. Samuels, No. 3:08cr00005, 2008 WL 1835736, at *1 (W.D. Va. April 23, 2008); DeBiasi v. Charter County of Wayne, 284 F. Supp. 2d 760, 768-69 (E.D. Mich. 2003); Hammond v. City of Junction City, Kan., 167 F. Supp. 2d 1271, 1288-89 (D. Kan. 2001); Hood v. Midwest Sav. Bank, No. C2-97-218, 2001 WL 327723, at *2 (S.D. Ohio Mar. 22, 2001); Howe Inv., Ltd. v. Perez Y Cia. de P.R., Inc., 96 F. Supp. 2d 106, 113 (D.P.R. 2000); Weeks Stevedoring Co., Inc. v. Raymond Int'l Builders, Inc., 174 F.R.D. 301, 303-04 (S.D.N.Y. 1997); Gray v. R.I. Dep't of Children, Youth and Families, 937 F. Supp. 153, 156 (D.R.I. 1996); Wang Labs., Inc. v.

## I. PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the court's July 28, 2011 Order Denying Plaintiff's Motion for Sanctions and to Declassify Attorney-Client Relationship.[2]

Chandra Evans, an African-American female, worked for Walgreens as a Staff Pharmacist from January of 2007 until she was terminated on December 20, 2007.[3] Evans alleges that on December 11, 2007, her PDA phone was stolen by Rafael Renfroe, a male Walgreens employee, who then attempted to override the passcode on her phone.[4] When Evans confronted Renfroe, he denied that he had

---

CFR Assoc., Inc., 125 F.R.D. 10, 12 (D. Mass. 1989). The Sixth Circuit has held, however, that "magistrate judges lack jurisdiction to enter Rule 11 orders." Bennett v. Gen. Caster Serv. of N. Gordon Co., 976 F.2d 995, 998 & n.7 (6th Cir. 1992). But see Homico Constr. & Dev. Co. v. Ti-Bert Sys., Inc., 939 F.2d 392, 394 n.1 (6th Cir. 1991) ("[A] Rule 11 motion is not dispositive . . . ."). Although Bennett involved a Rule 11 order entered by a magistrate judge post-judgment, the court did not appear to limit its holding to post-judgment Rule 11 motions. Bennett, 976 F.2d at 998 n.5 (noting that the Rule 11 motion was filed after judgment had been entered and an appeal taken, which was an "additional reason" why the magistrate judge did not have jurisdiction to enter an order on the Rule 11 motion). The undersigned believes that the prudent approach is to frame this decision as a report and recommendation.

[2]The district judge overruled Evans's objections to the order on August 15, 2011. (D.E. 139.)

[3]Prior to being hired as a Staff Pharmacist at Walgreens, Evans worked at Walgreens in 2004 as a pharmacy student in North Carolina. The circumstances surrounding her decision to relocate to Memphis are in dispute, although those factual disputes are not pertinent to resolving the present motion.

[4]Renfroe, who is African-American, worked as a Photo Specialist in the same Walgreens store as Evans.

stolen her phone.  According to Evans, Renfroe had a history of harassing female employees.  Evans reported the theft and her confrontation with Renfroe to Walgreens's management.  On December 13, 2007, Tracie Davis, a Walgreens Pharmacy Technician who worked under Evans's supervision, made a racially derogatory statement in Evans's presence.  Davis used the word "wigger," which was defined by Davis as a "white nigger."[5]  Evans also reported this conduct to management.

On or about December 13, 2007, Walgreens initiated an internal investigation into both incidents.  During the investigation, Evans was interviewed by Steve Walker (Walgreens's Loss Prevention Supervisor) and Jacob Tibbe (Evans's Pharmacy Supervisor) (collectively, "Investigators").  Evans eventually provided the Walgreens Investigators with a typed statement, in which she admitted to losing her temper with Renfroe, using profanity, telling him that she would "slap the piss out of him" if they were on the street, and telling him that if he had taken her car keys she would have "put him on the ground."  On December 20, 2007, Evans was notified by Walgreens that she was being terminated.

In her complaint, Evans alleges that she was discriminated against on the basis of her sex and/or race when she was investigated, suspended, and terminated from her employment at Walgreens.  Her discrimination claims are brought under Title VII

---

[5]Davis used the term to describe a Caucasian man whom she dated.

-3-

of the Civil Rights Act of 1964, the Tennessee Human Rights Act, and 28 U.S.C. § 2201.

Walgreens disputes these allegations. According to Walgreens, on December 13, 2007, Walker received notice from Store Manager Bryan Lindfield of a potential workplace violence incident between Evans and Renfroe.  On December 13 and 14, Walker interviewed Renfroe and other Walgreens employees who witnessed the confrontation, including Assistant Store Manager Kathi Holland and Davis.  These witnesses told Walker that Evans yelled at Renfroe, told him that if he ever touched her phone again she would "slap the piss" out of him, and told him that if he had taken her car keys she would have "put him in the ground."[6]  During the course of the investigation, Walker also learned that Evans had notified management about Davis's use of the word "wigger."  Walgreens interviewed Evans and three other employees about that incident. Based on the investigation, Renfroe and Davis were disciplined with final written warnings.

Walgreens further asserts that on December 14, 2007, the Investigators attempted to interview Evans about her altercation with Renfroe, and that she refused to cooperate.  Based on her refusal to cooperate with the investigation and the information

---

[6]Evans told the Investigators that she stated she would put Renfroe "on" the ground.

gathered from the investigation, Tibbe suspended Evans from work.[7] Afterwards, Evans provided the Investigators with the typed statement in which she admitted to threatening Renfroe. According to Walgreens, Tibbe decided to terminate Evans based on her violation of Walgreens's Workplace Violence Policy.

During the course of this litigation, Evans filed a Motion for Sanctions and Motion to Declassify Attorney-Client Relationship Against Defendant Walgreens Company ("Motion for Sanctions"). The Motion for Sanctions was based on Evans's communications with Puamuh Ghogomu, a Walgreens in-house attorney. Ghogomu works in Walgreens's Employee Relations Department, which is a department within the Human Resources Division at Walgreens where employees can make reports of discrimination.[8] As an attorney for Walgreens, Ghogomu's responsibilities include ensuring that Walgreens and its management are in compliance with federal, state, and local laws, giving advice to Walgreens's management, handling internal reports of discrimination by employees and, if an internal report results in a lawsuit, assisting in the ensuing litigation.[9]  (Def.'s Resp.

---

[7]According to Walgreens, it has a policy of requiring its employees to cooperate with any investigation being conducted by Loss Prevention.

[8]The Human Resources Division and the Legal Division are separate divisions within Walgreens.

[9]According to Tibbe's deposition testimony, he and another Walgreens manager made the decision to terminate Evans, and he contacted Ghogomu to seek legal advice about the decision. (Tibbe Dep. 46:9-18; 98:25.)

to Mot. for Sanctions at 18 & n.26.)  When Evans complained to management about the incidents with Renfroe and Davis, she was told to contact Walgreens's Employee Relations Department.  Evans called that department and spoke with Ghogomu.  In total, Evans spoke to Ghogomu on the telephone three times on December 14.

Evans claimed that Ghogomu, who was allegedly only concerned with protecting Walgreens's interests, had conversations with Evans about the Renfroe and Davis incidents even though he was aware that she had previously consulted with another lawyer.  She further claimed that Ghogomu coerced her into cooperating with the investigation without the aid of a lawyer, providing a typed statement that contained false or embellished facts relayed by Ghogomu to her, and attending a termination meeting without a lawyer.  (Pl.'s Mot. for Sanctions at 1-2.)  Evans also alleged that Walgreens's lead trial counsel in this litigation, attorneys with the firm of Leitner, Williams, Dooley & Napolitan, PLLC ("Leitner Williams"), were "personally involved in the investigation into Ms. Evans' complaints and the decision to terminate her for making the protected complaints" and that "[u]pon information and belief, Leitner Williams was aware of, and sanctioned, Ghogomu's conduct throughout."  (Id. at 2.)  Evans argued that Ghogomu violated Tennessee Rules of Professional Conduct ("TRPC") 4.2 and 4.3, and that Leitner Williams violated TRPC 8.4.

Walgreens filed a response in opposition to the Motion for Sanctions, in which it disputed Evans's factual and legal allegations. Walgreens subsequently filed the present Rule 11 Motion, in which it raises the same arguments contained in its opposition brief to the Motion for Sanctions as grounds for imposing Rule 11 sanctions against Evans's counsel.

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   Rule 11**

"Rule 11 generally requires an attorney to conduct a reasonable inquiry into the relevant law and facts before signing pleadings, written motions, or other documents, and it prescribes sanctions for violations of these obligations." <u>Nieves v. City of Cleveland</u>, 153 F. App'x 349, 352 (6th Cir. 2005); <u>see also</u> <u>Jones v. Ill. Cent. R.R. Co.</u>, 617 F.3d 843, 854 (6th Cir. 2010) (stating that Rule 11 authorizes a court to sanction an attorney who presents court filings for an improper purpose or based on frivolous arguments). The Rule provides:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>>
>> (2)   the claims, defenses, and other legal

-7-

>    contentions are warranted by existing law or
>    by a nonfrivolous argument for extending,
>    modifying, or reversing existing law or for
>    establishing new law;
>
> (3) the factual contentions have evidentiary
>     support or, if specifically so identified,
>     will likely have evidentiary support after a
>     reasonable opportunity for further
>     investigation or discovery; and
>
> (4) the denials of factual contentions are
>     warranted on the evidence or, if specifically
>     so identified, are reasonably based on belief
>     or a lack of information.

Fed. R. Civ. P. 11(b).

In the Sixth Circuit, the test for the imposition of Rule 11 sanctions is "whether the attorney's conduct was objectively reasonable under the circumstances," and the trial court "has broad discretion in determining when a sanction is warranted and what sanction is appropriate."[10] Nieves, 153 F. App'x at 352; see also Huntsman v. Perry Local Sch. Bd. of Educ., 379 F. App'x 456, 461 (6th Cir. 2010) (same). "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Merritt v. Int'l Ass'n of Machinists and Aerospace Workers, 613 F.3d 609, 626 (6th Cir. 2010)

---

[10]Rule 11 requires the party seeking sanctions to provide "safe harbor" notice by serving the motion on the opposing party at least twenty-one days before filing the motion with the court. Fed. R. Civ. P. 11(c)(2). Walgreens has complied with this pre-filing requirement, as evidenced in its Certificate of Consultation. (D.E. 72-2.)

(internal quotation marks and citation omitted).

**B.   Whether Evans's Attorney Violated Rule 11**

The court submits that Evans's attorney, Mr. Aubrey Pittman, did not violate Rule 11 by filing Evans's Motion for Sanctions. First, Walgreens contends that Pittman violated Rule 11 by claiming in the Motion for Sanctions that Ghogomu spoke to Evans even though he knew that she had consulted with an attorney, in violation of TRPC 4.2. Although the court rejected this argument in its July 28 order – and in doing so, admonished Pittman for deliberately omitting critical portions of Ghogomu's deposition testimony – the court finds that, based on the fact that Evans told Ghogomu that she had spoken to a family friend who happened to be an attorney, Pittman had at least some factual basis (albeit tenuous) to make the claim.[11]  Under these circumstances, Pittman's conduct was objectively reasonable.

Second, Walgreens argues that Pittman had no factual or legal basis to allege that Ghogomu engaged in the unauthorized practice

---

[11]Walgreens also claims that Pittman violated Rule 11 by alleging that Ghogomu was aware that Evans had retained a lawyer, when in fact she had not.  Page one of the Motion for Sanctions stated that "[a]t the time of his conversations with Ms. Evans, Ghogomu was aware that she had consulted and *retained* another lawyer." (emphasis added.)  However, in the other parts of the Motion for Sanctions and in the reply brief, Pittman did not allege that Evans had retained a lawyer.  Moreover, in Evans's affidavit (discussed below), she did not claim that she had engaged the services of an attorney to represent her.  Therefore, the court does not construe the Motion for Sanctions as having made a claim that Evans had retained a lawyer.

of law.  As discussed in footnote 8 of the July 28 order, although not entirely clear from the Motion for Sanctions and reply brief, it appeared that Evans cited Tenn. Code Ann. § 23-3-103 to show that Ghogomu gave Evans "legal advice" in violation of TRPC 4.3. Thus, because Evans apparently was trying to argue that Ghogomu engaged in the *authorized* practice of law, this allegation did not violate Rule 11.

Third, Walgreens asserts that Pittman violated Rule 11 by alleging without any evidentiary support that Evans did not know that Ghogomu was a lawyer who was protecting Walgreens's interest, that he provided "false promises" and "deceitful assurance[s]" to Evans in furtherance of his "clandestine plan of preying on Ms. Evans' legal naivete," that he was covertly working to terminate Evans, and that he coerced Evans into providing false information in her written statement.  The evidentiary support for these allegations came from Evans's November 14, 2010 affidavit filed in support of her opposition to Walgreens's Motion for Summary Judgment, in which Evans claimed: (1) during her conversations with Ghogomu, she notified him that she had spoken to a licensed attorney and that Ghogomu proceeded to talk with her and advised her that she "had" to meet with the Investigators and give them a statement; (2) Ghogomu told Evans what her co-workers had said about the incidents in question and "[h]e told me [this] is what he wanted me to include in my written statement"; (3) Ghogomu told her

to provide those statements to the Investigators; (4) she was led by Ghogomu to believe that if she did those things "everything would be fine" and she would be allowed to keep her job; (5) Ghogomu and the Investigators did not inform her that the meeting she was told to attend was a "termination of employment meeting," nor did they tell her that the written statement would be used against her; and (6) her statement was "coerced" by Walgreens's management, including Ghogomu who gave her legal advice as to whether to prepare the statement and what should be included in the statement. (Evans Aff. ¶¶ 13-18.) In the July 28 order, the court gave essentially no weight to Evans's affidavit, because Evans had been deposed about her communications with Ghogomu and did not raise any of these serious allegations during her deposition, and because the allegations were inconsistent with Ghogomu's deposition testimony. However, even though the court discredits Evans's allegations in her affidavit, the court cannot conclude that it was unreasonable for Pittman to rely on his client's sworn affidavit in bringing the Motion for Sanctions. See <u>J.T. Shannon Lumber v. Barrett</u>, No. 07-2847-Ml/P, 2011 WL 1130530, at *15 (W.D. Tenn. Feb. 9, 2011) (Pham, M.J.) (finding that defendant's attorneys did not violate Rule 11 and that it was reasonable for them to believe their client and rely on his sworn affidavit, which contradicted his deposition testimony).

Finally, Walgreens contends that Pittman violated the rule by

alleging – without any citation to the record or other evidentiary support – that attorneys with Leitner Williams had violated TRPC 8.4 because they were "personally involved in the investigation into Ms. Evans' complaints and the decision to terminate her for making the protected complaints" and that "[u]pon information and belief, Leitner Williams was aware of, and sanctioned, Ghogomu's conduct throughout."  In addition to the lack of any evidentiary support for this allegation, Walgreens argues that the allegation was baseless as evidenced by the affidavit filed by Walgreens's lead counsel, attorney J. Gregory Grisham, in which he stated that Leitner Williams did not begin its representation of Walgreens in this matter until May 30, 2008 (i.e. several months after Evans's investigation and termination), when Walgreens received a letter from Evans's counsel regarding this matter.  (Def.'s Resp. to Mot. for Sanctions, Ex. 4: Aff. of J. Gregory Grisham.)  The court has concerns with Pittman's decision to make a serious factual allegation regarding opposing counsel's involvement in Evans's investigation and termination without any evidentiary support.  However, by the time Pittman filed the reply brief, it appears that he was no longer making that allegation.  In the reply brief (which was filed before Walgreens filed its Rule 11 Motion), Pittman stated that "[e]ven if Leitner Williams now argues that they were initially unaware as to 'how' Walgreens extracted that incriminatory written statement from Plaintiff, it is clear that

-12-

during Ghogomu's deposition Leitner Williams became aware of the violation" and that "[d]espite this knowledge, Leitner Williams used this statement in an effort to obtain [summary] judgment against Plaintiff without so much as a second thought as to how this statement was obtained."  Although Pittman did not expressly withdraw his allegation that Leitner Williams was involved in the investigation and termination, he implied that he was proceeding at that point only with his allegation that Leitner Williams later became aware of Ghogomu's alleged ethical violations and used the fruits of those violations to seek summary judgment.  Because the court has concluded that Pittman's conduct as to the allegations against Ghogomu and Walgreens's management did not violate Rule 11, the court likewise concludes that his related argument – that Leitner Williams should not have used Evans's statement in support of the summary judgment motion – did not violate the rule.

### III.  RECOMMENDATION

For the reasons above, it is recommended that Walgreens's Rule 11 Motion be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 16, 2011
Date

### NOTICE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.**

**28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**