IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CHANDRA EVANS,                    )
                                  )
      Plaintiff,                  )
                                  )
v.                                )        No. 09-2491
                                  )
WALGREEN COMPANY,                 )
                                  )
      Defendant.                  )

---

**ORDER**

---

Before the Court are the October 15, 2010 Motions for
Summary Judgment filed by Defendant Walgreen Company
("Walgreens") seeking summary judgment on its counterclaim for
breach of contract and on Plaintiff Chandra Evans' ("Evans")
claims arising from Walgreens' termination of her employment.[1]
(See Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for
Breach of Contract, ECF No. 44; Def. Walgreen Co.'s Mot. for
Summ. J., ECF No. 45.) On November 14, 2010, Evans responded in
opposition. (See Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot.
for Summ. J., ECF No. 62 ("Pl.'s Resp."); Pl.'s Resp. and Mem.
in Opp'n to Def.'s Mot. for Summ. J. on Breach of Contract

---

[1] Walgreens docketed its memorandum in support of its motion for summary
judgment as a separate motion for summary judgment. (See ECF No. 43.) The
Court noted that the memorandum was not a motion, informed Walgreens that the
memorandum should be submitted as a document attached to the motion, and
terminated the memorandum from the pending motion list. (Deficiency Notice,
ECF No. 51.)

Countercl., ECF No. 63.)  Walgreens replied on December 2, 2010. (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 70.)

Also before the Court is Evans' Motion for Summary Judgment on Walgreens' breach of contract counterclaim filed on October 15, 2010.  (See Pl.'s Mot. for Summ. J. Against Def. Walgreens Company, ECF No. 46.)  ("Pl.'s Mot. and Statement of Facts") Walgreens responded in opposition on November 13, 2010. (Def.'s, Counter/Plaintiff's Mem. in Opp'n to Pl., Counter/Defendant's Mot. for Summ. J., ECF No. 61.)  Evans replied on November 22, 2010.  (Pl.'s Reply to Def.'s/Counterplaintiff's Resp. and Mem. in Opp'n to Pl.'s Mot. for Summ. J. on Pl.'s Breach of Contract Claim, ECF No. 64.)

For the following reasons, Walgreens' Motion for Summary Judgment on Evans' claims is GRANTED.  Walgreens' Motion for Summary Judgment on its counterclaim for breach of contract is DENIED.  Evans' Motion for Summary Judgment on Walgreens' breach of contract claim is DENIED.

**I.   Background[2]**

---

[2]  Walgreens and Evans moved for summary judgment and Evans responded to Walgreens' summary judgment motions while the previous edition of the local rules governed actions in this district.  Under that version, Local Rule 7.2(d)(3) provided that a party opposing a motion for summary judgment who disputed any of the material facts on which the proponent relied was to "respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." W.D. Tenn. Civ. R. 7.2(d)(3).  In most of her responses, Evans has not

In July 2004, Evans began working for Walgreens while she was a pharmacy student in North Carolina. (<u>See</u> Def.'s Concise Statement of Undisputed Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 8, ECF No. 45-2 ("Walgreens' Statement of Facts"); Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot. for Summ. J. ¶ 8, ECF No. 62-6 ("Evans' Resp. to Walgreens' Statement of Facts").) While still in pharmacy school, Walgreens offered Evans the opportunity to relocate to Memphis, Tennessee, to work in Walgreens' East Memphis District as a pharmacy intern and as a licensed pharmacist once she had graduated and passed the Tennessee licensing examination. (<u>See</u> Walgreens' Statement of Facts ¶ 10; Evans' Resp. to Walgreens' Statement of Facts ¶ 10.)

According to Walgreens, Evans accepted the offer and was paid $1,500.00 as a relocation incentive payment and $20,000.00 as a sign-on-bonus incentive payment. (<u>See</u> Walgreens' Statement of Facts ¶¶ 11-12.) As a condition of accepting those payments, Walgreens allegedly required Evans to agree to repay the money if she did not work for Walgreens as a licensed pharmacist in

---

complied with the rule because she has not cited or attached the precise portions of the record on which she relies to dispute Walgreens' factual assertions. (<u>See</u> Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 62-6.) Evans admits the factual assertions that she has not properly disputed. <u>See</u> <u>Akines v. Shelby Cnty. Gov't</u>, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007); <u>see also</u> <u>George v. Vought Aircraft Indus., Inc.</u>, No. 3:08-0787, 2009 WL 5217002, at *4 n.2 (M.D. Tenn. Dec. 30, 2009) (applying similar local rule); <u>Geesling v. Clay Cnty.</u>, No. 2:06-0056, 2007 WL 2509671, at *1 n.1 (M.D. Tenn. Aug. 30, 2007) (applying similar local rule). The outcome would be the same under the current version of the local rules. <u>See</u> W.D. Tenn. Civ. R. 56.1(b). Unless otherwise stated, Evans' responses have been disregarded where she has failed to comply with the local rules, and the facts discussed in this Part are undisputed.

the East Memphis District for three years.  (See id. ¶¶ 11, 53, 57-58, 61-63.)  Walgreens has attached a copy of the contracts in which Evans allegedly made those promises and electronically checked a box next to the statement "I understand the above terms of the WALGREEN CO. Pharmacy Incentive Program, and agree to abide by such terms."  (See Pharmacy Relocation Incentive Payment, ECF No. 45-6; Pharmacy Sign-on-Bonus Incentive Payment, ECF No. 45-6.)

According to Evans, she did not place a check mark in the box on the contracts stating that she understood and agreed to abide by their terms.  (See Evans' Resp. to Walgreens' Statement of Facts ¶¶ 11-12, 57-58, 61-63.)  She has attached an affidavit in which she states "[t]he first time I saw the alleged written bonus document was during the course of this litigation.  I did not sign or acknowledge this agreement."  (Aff. of Chandra Evans ¶ 4, ECF No. 62-1.)

Evans moved to Memphis before her graduation from pharmacy school and worked as an intern at Walgreens until she graduated and passed the Tennessee licensing examination.  (See Walgreens' Statement of Facts ¶ 14; Evans' Resp. to Walgreens' Statement of Facts ¶ 14.)  After passing the examination, Evans began working as a staff pharmacist in the East Memphis District in January 2007.  (See Walgreens' Statement of Facts ¶ 15; Evans' Resp. to Walgreens' Statement of Facts ¶ 15.)  Staff pharmacists at

Walgreens are responsible for managing the pharmacy's operations when they are scheduled to work and the pharmacy manager is not on duty.[3]  (<u>See</u> Walgreens' Statement of Facts ¶ 6.)  In those situations, staff pharmacists have supervisory authority over pharmacy technicians and cashiers working in the pharmacy.[4]  (<u>See</u> <u>id.</u> ¶ 7.)  In August 2007, Evans was transferred to a Walgreens store in Cordova.  (<u>See</u> <u>id.</u> ¶ 17; Evans' Resp. to Walgreens' Statement of Facts ¶ 17.)

On December 13, 2007, Walgreens Loss Prevention Supervisor Steve Walker ("Walker") received notice from Store Manager Bryan Lindfield ("Lindfield") of a potential workplace violence incident between Evans and Photo Technician Rafael Renfroe ("Renfroe").  (<u>See</u> Walgreens' Statement of Facts ¶¶ 18, 76.) The incident had occurred on December 11, 2007.  (<u>See</u> <u>id.</u> ¶ 28.) Walker began an investigation.  (<u>See</u> <u>id.</u> ¶ 19.)  He interviewed Assistant Store Manager Kathi Holland ("Holland") and Pharmacy Technician Tracie Davis ("Davis"), who had witnessed the

---

[3] Evans' response that she disagrees with the description of staff pharmacists' responsibilities does not contain any citations to the record. (<u>See</u> Evans' Resp. to Walgreens' Statement of Facts ¶ 6.)  Therefore, she admits the contents of Walgreens' paragraph 6 for purposes of Walgreens' summary judgment motion on her claims.  <u>See</u> <u>Akines</u>, 512 F. Supp. 2d at 1147-48.

[4] Evans' response that she has no basis to admit or deny this statement does not comply with the local rules' requirements for disputing factual assertions in statements of undisputed material facts accompanying summary judgment motions.  (<u>See</u> Evans' Resp. to Walgreens' Statement of Facts ¶ 7.) Therefore, she admits the contents of Walgreens' paragraph 7 for purposes of Walgreens' summary judgment motion on her claims.  <u>See</u> <u>Akines</u>, 512 F. Supp. 2d at 1147-48.

incident and who voluntarily provided a written statement. (See id. ¶¶ 20, 22.)

Holland reported to Walker that Renfroe had entered the office at the Walgreens store with Evans' cell phone and that Davis had entered to count money from the cash register.[5] (See id. ¶ 21.) Evans called the office and asked to speak to Renfroe, and Renfroe left the office, leaving Evans' cell phone on the counter. (See id.) Davis called Evans and told her that Renfroe had left her cell phone on the counter. (See id.) After a few minutes, Evans entered the office looking for Renfroe, and Holland told her that he had left the office. (See id.) Evans paged Renfroe, but he did not answer. (See id.) Evans left the office, and Holland heard her yelling at Renfroe a few minutes later to come into the office. (See id.) Evans and Renfroe entered the office, and Evans began to yell at Renfroe very loudly. (See id.) Evans was approximately one foot away from Renfroe, shaking her finger in his face, when she began screaming as loudly as she could, "do not ever touch my personal belongings again." (Id.) Evans then told Renfroe, "If

---

[5] Evans states in opposition to Walgreens' paragraph 21 that she has no basis to know the contents of Walker's report and that the report contains misrepresentations of fact. (Evans' Resp. to Walgreens' Statement of Facts ¶ 21.) Evans cites an affidavit in which she asserts without further elaboration that she has reviewed Holland's statement and it "contain[s] statements that are fabricated, inaccurate or incomplete." (Aff. of Chandra Evans ¶ 25.) Because Evans has not provided any factual detail about what she disputes and has not complied with the local rules, she admits the content of Walgreens' paragraph 21 for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

you ever take anything of mine again, I will slap the piss out of you" and that "you['re] lucky you did not take my car keys or you would be in the ground." (Id.) Renfroe attempted to apologize, but Evans told him to "shut up." (Id.) Davis gave Walker substantially identical information.[6] (See id. ¶ 23.)

Walker informed Jacob Tibbe ("Tibbe"), Evans' Pharmacy Supervisor, about his investigation of the incident and the information he had gathered. (See Walgreens' Statement of Facts ¶ 24.) On December 14, 2007, Walker and Tibbe attempted to interview Evans about the incident, but Evans refused. (See id. ¶ 25.) In response, Tibbe suspended Evans because she refused to cooperate, contrary to Walgreens' policy requiring cooperation with investigations conducted by the loss prevention department, and based on the information obtained in the investigation.[7] (See id. ¶¶ 25-26.)

---

[6] Evans states in opposition to Walgreens' paragraph 23 that she has no basis to know the contents of Walker's report and that the report contains misrepresentations of fact. (Evans' Resp. to Walgreens' Statement of Facts ¶ 23.) Because Evans has an affidavit in which she asserts without further elaboration that she has reviewed Davis' statement and it "contain[s] statements that are fabricated, inaccurate or incomplete." (Aff. of Chandra Evans ¶ 25.) Because Evans has not provided any factual detail about what she disputes and has not complied with the local rules, she admits the content of Walgreens' paragraph 23 for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

[7] In response to Walgreens' assertion that Tibbe suspended Evans in part for her refusal to cooperate, Evans states that "[a]s to Paragraph 25, Plaintiff contends that Defendant terminated her due to her race and in retaliation for her complaints, not for any refusal to cooperate." (Evans' Resp. to Walgreens' Statement of Facts ¶ 25.) In support, Evans cites her original complaint and her response to Walgreens' summary judgment motion. (See id.) In response to Walgreens' paragraph 26, Evans asserts, "Plaintiff objects to the legal conclusion being formed by the deponent and/or the affiant and never agreed to such a requirement," and cites an affidavit in which she

The same day, Walker interviewed Renfroe about the incident, and Renfroe voluntarily provided a written statement. (See id. ¶ 27.) Renfroe reported that he took Evans' phone without her permission as a joke and that Evans yelled at him in the office, saying that "she was going to slap the piss out of him" and "that if he had taken her car keys he would be in the ground."[8] (See id. ¶ 28.)

While investigating the incident between Evans and Renfroe, Walker learned that Davis had used the term "wigger" in the presence of Evans and Dondre Halley ("Halley").[9] (See id. ¶ 29.) In response, Walker began investigating Davis' use of the term. (See id. ¶¶ 29-30.) He interviewed Davis, Assistant Store Manager Lora Holbrooks ("Holbrooks"), Halley, and Evans about Davis' use of the term. (See id. ¶¶ 30-31, 33.)

_____

states that she never agreed to a policy requiring cooperation with Walgreens' investigations. (Id. ¶ 26; Aff. of Chandra Evans ¶ 26.) Because Evans has not cited any evidence in the record suggesting that Walgreens did not have a policy requiring cooperation with loss prevention investigations and that Tibbe suspended her for failing to comply with that policy, Evans admits the content of Walgreens' paragraphs 25 and 26 for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

[8] Evans states in opposition to Walgreens' paragraph 28 that she has no basis to know the contents of Walker's report and that the report contains misrepresentations of fact. (See Evans' Resp. to Walgreens' Statement of Facts ¶ 28.) Evans cites an affidavit in which she asserts without further elaboration that she has reviewed Renfroe's statement and it "contain[s] statements that are fabricated, inaccurate or incomplete." (Aff. of Chandra Evans ¶ 25.) Because Evans has not provided any factual detail about what she disputes, she admits the content of Walgreens' paragraph 28 for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

[9] Evans' attempt to dispute this factual assertion is unresponsive. (Evans' Resp. to Walgreens' Statement of Facts ¶ 29.) Therefore, she admits the content of Walgreens' paragraph 29 for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

Halley reported that, on December 11, 2007, Davis described a blind date she had taken and remarked that the male on her date had a lot of tattoos and was a "Wigger."[10]  (See id. ¶ 34.) Evans asked what a "Wigger" was and Halley told her it was a term used by the rapper Eminem.  (Id.)  Evans remarked, "You mean white nigger?" and Halley and Davis said yes.  (Id.) Halley did not hear Davis use the term "nigger" during the conversation.  (Id.)

Davis provided substantially identical information.[11]  (See id. ¶ 32.)  According to Davis, she was describing a blind date to Evans and Halley and said that her date was not her type because he had a lot of tattoos.  (See id.)  She asked Halley, "[D]o you remember my ex-boyfriend," Halley responded, "[Y]es," and Davis said that he is a "Wigger."  (Id.)  Evans said, "What is that?" and Davis responded that Eminem is a "Wigger."  (Id.)

---

[10] Evans states in opposition to Walgreens' paragraph 34 that she has no basis to know the contents of Walker's report and that the report contains misrepresentations of fact.  (Evans' Resp. to Walgreens' Statement of Facts ¶ 34.)  Evans cites an affidavit in which she asserts without further elaboration that she has reviewed statements provided to Walker and they "contain statements that are fabricated, inaccurate or incomplete."  (Aff. of Chandra Evans ¶ 25.)  Because Evans has not provided any factual detail about what she disputes, she admits the content of Walgreens' paragraph 34 for purposes of Walgreens' summary judgment motion on her claims.  See Akines, 512 F. Supp. 2d at 1147-48.

[11] Evans states in opposition to Walgreens' paragraph 32 that she has no basis to know the contents of Walker's report and that the report contains misrepresentations of fact.  (Evans' Resp. to Walgreens' Statement of Facts ¶ 32.)  Evans cites an affidavit in which she asserts without further elaboration that she has reviewed Davis' statement and it "contain[s] statements that are fabricated, inaccurate or incomplete."  (Aff. of Chandra Evans ¶ 25.)  Because Evans has not provided any factual detail about what she disputes, she admits the content of Walgreens' paragraph 32 for purposes of Walgreens' summary judgment motion on her claims.  See Akines, 512 F. Supp. 2d at 1147-48.

Evans asked, "You mean a white nigger," and Davis responded that she did not like the word, but the answer was "[Y]es." (Id.) Davis apologized to Evans and Halley, both of whom are African-American, and said that they laughed about the comment. (Id.) After the conversation, customers' prescriptions began to fall on the floor off of a conveyor belt, and Davis reported that, as she and Evans began to pick them up, Evans said, "[I]t must have been a Wigger that did it" and they both laughed. (Id.) Sometime later, when Evans was leaving for lunch, she told Davis that she did not like the word "Wigger," and Davis apologized again. (Id.) On December 13, 2007, Evans said in front of Davis and Holbrooks that Davis should leave for her own good.[12] (See id. ¶ 36.)

On December 17, 2007, Evans was interviewed by Walker and Tibbe and provided a written statement.[13] (See id. ¶ 37.) During her interview, Evans admitted to "losing it" with Renfroe

---

[12] Evans' attempts to dispute the factual assertions in Walgreens' paragraph 36 do not comply with the local rules. (Evans' Resp. to Walgreens' Statement of Facts ¶ 36.) Because the portion of her affidavit that she cites does not provide any detail about what she disputes (Aff. of Chandra Evans ¶ 25), she admits the content of Walgreens' paragraph 36 for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

[13] Evans states in opposition "that any statement from her was coerced by Walgreen's management, including Walgreen's in-house lawyer who gave her legal advice as to whether to prepare the statement and what should be included in it" and has attached an affidavit stating that she was misled by Walgreens in agreeing to be interviewed and provide a statement. (See Evans' Resp. to Walgreens' Statement of Facts ¶ 37; Aff. of Chandra Evans ¶¶ 14-15.) Because Evans has not offered evidence specifically responding to the remainder of Walgreens' paragraph 37, she admits the remainder for purposes of Walgreens' summary judgment motion on her claims. See Akines, 512 F. Supp. 2d at 1147-48.

and being infuriated by his taking her phone.[14]   (See id. ¶ 38.)
She admitted using profanity and "telling him that she would
slap the piss out of him if they were on the street."   (Id.)
She also admitted stating that "if he had taken her car keys she
would have put him on the ground."   (Id.)   Walgreens has filed a
copy of Evans' written statement in which she confirms her
conduct.   (Statement Given by Chandra M. Evans, ECF No. 45-4.)

Walker and Tibbe also interviewed Evans about the incident
with Davis, and Evans provided a written statement largely
confirming Halley's and Davis' accounts, but adding that Davis
mouthed "white nigger" and Evans told Davis in response, "I'm
just too tired to go off on you right now."[15]   (See Walgreens'

---

[14] Evans attempts to dispute the factual assertions in this paragraph by
citing an affidavit allegedly stating without elaboration that Walker's
report contains misrepresentations of fact.   (See Evans' Resp. to Walgreens'
Statement of Facts ¶ 38.)   The portion of the affidavit she cites says
nothing about whether the statements attributed to her are incorrect.   (See
Aff. of Chandra Evans ¶ 25.)   Therefore, Evans admits the factual assertions
in Walgreens' paragraph 38.   See Akines, 512 F. Supp. 2d at 1147-48.
[15] Evans states in opposition "that any statement from her was coerced by
Walgreen's management, including Walgreen's in-house lawyer who gave her
legal advice as to whether to prepare the statement and what should be
included in it" and has attached an affidavit stating that she was misled by
Walgreens in agreeing to be interviewed and provide a statement.   (See Evans'
Resp. to Walgreens' Statement of Facts ¶ 39; Aff. of Chandra Evans ¶¶ 14-15.)
Because Evans has not offered evidence specifically responding to the
remainder of Walgreens' paragraph 39, she admits the remainder for purposes
of Walgreens' summary judgment motion on her claims.   See Akines, 512 F.
Supp. 2d at 1147-48.   Evans' attempt to dispute the contents of Walgreens'
paragraph 40 is also unavailing because she cites a portion of her affidavit
as support for the proposition that Walkers' report contains
misrepresentations of fact, but the portion of her affidavit she cites does
not state that the statements attributed to her are disputed or which of the
statements attributed to her contains misrepresentations of fact.   (See
Evans' Resp. to Walgreens' Statement of Facts ¶ 40; Aff. of Chandra Evans ¶
25.)   Therefore, Evans admits the content of Walgreens' paragraph 40 for
purposes of Walgreens' summary judgment motion on her claims.   See Akines,
512 F. Supp. 2d at 1147-48.

Statement of Facts ¶¶ 39-40; Statement Given by Chandra M. Evans, ECF No. 45-4.)   In her statement, Evans admitted later telling Davis that "you need to stay away from me right now if you know whats [sic] good for you."   (Statement Given by Chandra M. Evans, ECF No. 45-4.)

Walker discussed the facts he had gathered with Tibbe and East Memphis District Manager Dan Piela ("Piela") and gave them the witnesses' statements.[16]   (See Walgreens' Statement of Facts ¶ 41.)   After reviewing the information Walker provided and consulting with Piela, Tibbe decided to terminate Evans for violating Walgreens' workplace violence policy.[17]   (See id. ¶ 42.)   The workplace violence policy states that Walgreens will not tolerate any form of violence, threats of violence, harassment, or intimidation, and that any individual who engages in threatening behavior or violent acts or who makes comments about harming others may be subject to termination of

---

[16] Evans attempts to dispute this factual assertion by citing a portion of her affidavit.   (See Evans' Resp. to Walgreens' Statement of Facts ¶ 41.)   The portion of her affidavit cited states that the witnesses' statements collected by Walker "contain statements that are fabricated, inaccurate or incomplete."   (Aff. of Chandra Evans ¶ 25.)   Because Evans has not directly responded to the content of Walgreens' paragraph 41, she admits the content of that paragraph for purposes of Walgreens' summary judgment motion on her claims.   See Akines, 512 F. Supp. 2d at 1147-48.

[17] Evans' response to this factual assertion is not consistent with the local rules.   (See Evans' Resp. to Walgreens' Statement of Facts ¶ 42.)   She states that she "contends that Defendant terminated her due to her race and in retaliation for her complaints, not for any violation of a nebulous policy that was applied by Walgreen in a racially discriminatory manner" and cites in support her original complaint and her response to Walgreens' summary judgment motion on her claims.   (Id.)   Because her response does not comply with the local rules, she admits the content of Walgreens' paragraph 42 for purposes of Walgreens' summary judgment motion on her claims.   See Akines, 512 F. Supp. 2d at 1147-48.

employment.  (See id. ¶ 5.)  It states that workplace violence may be in the form of verbal, nonverbal, or physical conduct. (See id.)  It lists "[t]hreatening, intimidating, coercing, or harassing conduct of a verbal, nonverbal, or physical nature" as an example.  (See id.)

Tibbe notified Evans on December 20, 2007, that Walgreens had terminated her employment.  (See id. ¶ 43; Evans' Resp. to Walgreens' Statement of Facts ¶ 43.)  Davis and Renfroe, neither of whom had management level authority, received final written warnings for their roles in the incidents.  (See Walgreens' Statement of Facts ¶¶ 44-45, 76-77, 79.)  Renfroe had never taken Evans' phone before and Davis never made a racially derogatory statement in Evans' presence other than the "Wigger" comment.  (See id. ¶ 82.)  After Walgreens terminated Evans' employment, an email was sent by the district secretary to all staff in the East Memphis District advising them that Evans was no longer employed and should not be provided with an employee discount.  (See id. ¶ 47.)  Walgreens sends similar emails whenever a pharmacist or manager is no longer employed by Walgreens.  (See id. ¶ 48.)

Evans appealed her termination pursuant to Walgreens' Open Door Policy by writing a letter to Piela.  (See id. ¶ 49; Evans' Resp. to Walgreens' Statement of Facts ¶ 49.)  Under the Open Door Policy, employees may raise any concerns they have with

13

their immediate supervisor, their manager's supervisor, or the vice president of human resources at the corporate office. (See Walgreens' Statement of Facts ¶ 4.) Piela and Tibbe considered Evans' appeal and decided to offer Evans an opportunity to return to work by offering to convert the termination into a final warning if Evans attended an anger management course and relocated to another store in the East Memphis District. (See id. ¶ 50.) Evans rejected their offer. (See id. ¶ 51.)

Evans has submitted a statement of undisputed material facts in support of her summary judgment motion.[18] In July 2004, Evans was hired by Walgreens as a pharmacy intern. (See Pl.'s Mot. and Statement of Facts 5; Def.'s, Counter/Plaintiff's Resp. to Pl., Counter/Defendant's Statement of "Undisputed Facts" 1, ECF No. 61-1 ("Walgreens' Resp. to Pl.'s Statement of Facts").) According to Evans, Walgreens' representative Eugene Hoover ("Hoover") made promises to convince her to move to Memphis. (See Pl.'s Mot. and Statement of Facts 6.) Walgreens disputes this factual assertion and states that Evans has testified that Hoover made no promises to her about her employment in the East Memphis District and that she had no particular reason to move to Memphis. (See Walgreens' Resp. to Pl.'s Statement of Facts 1-2.) Evans and Walgreens agree that Hoover had the authority

---

[18] Unless otherwise stated, the facts in this paragraph are undisputed for purposes of Evans' summary judgment motion.

to hire Evans, but dispute whether Hoover told Evans that Walgreens would employ her for at least three years because it was paying her a sign-on bonus. (See Pl.'s Mot. and Statement of Facts 6; Walgreens' Resp. to Pl.'s Statement of Facts 2-3.) Evans and Walgreens also agree that Evans became a licensed pharmacist in January 2007, that she was reclassified as a pharmacist, that Walgreens does not have any written agreements with Evans' handwritten signature, and that Walgreens terminated Evans' employment in December 2007. (See Pl.'s Mot. and Statement of Facts 6; Walgreens' Resp. to Pl.'s Statement of Facts 4, 6.) They disagree about whether Evans signed the sign-on-bonus incentive payment contract and relocation incentive payment contract on which Walgreens bases the summary judgment motion on its breach of contract counterclaim. (See Pl.'s Mot. and Statement of Facts 6; Walgreens' Resp. to Pl.'s Statement of Facts 5-6.)

On July 31, 2009, Evans filed a complaint against Walgreens with the following counts: (1) violation of 42 U.S.C. § 2000e-2(a)(1), (2) violation of 42 U.S.C. § 2000e-2(a)(2), (3) violation of 42 U.S.C. § 2000e-3(a), (4) violation of 42 U.S.C. § 1981, (5) a request for a declaration that Walgreens' actions constituted discrimination based on her race and sex and injunctive relief, including reinstatement and back pay, (6) a request for a declaration that she has a contract requiring

15

Walgreens to employ her for at least three years, (7) breach of express contract, (8) breach of implied contract, (9) misrepresentation, (10) defamation, (11) promissory estoppel, (12) negligent infliction of emotional distress, (13) intentional infliction of emotional distress, and (14) a request for attorney's fees under 42 U.S.C. § 1988. (Original Compl. 6-16, ECF No. 1.) ("Compl.") In Walgreens' answer, it asserts a counterclaim for breach of contract based on Evans' failure to repay her sign-on bonus and relocation incentive payment. (Answer and Counter-Claim 12-14, ECF No. 10.)

## II.  Jurisdiction and Choice of Law

Because Evans alleges violations of federal law, the Court has subject matter jurisdiction under the general grant of federal question jurisdiction in 28 U.S.C. § 1331. See 28 U.S.C. § 1331; Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 201 (6th Cir. 2004). The Court has supplemental jurisdiction over Evans' state-law claims because they derive from the same nucleus of operative facts as the federal-law claims over which the Court has original jurisdiction and thus form part of the same case or controversy. See 28 U.S.C. § 1367(a); Harper, 392 F.3d at 209. The Court also has supplemental jurisdiction over Walgreens' counterclaim because it derives from the same nucleus of operative facts as Evans' claims, forming part of the same case or controversy. See 28 U.S.C. § 1367(a); Davet v. City of

16

Cleveland, 456 F.3d 549, 553-55 (6th Cir. 2006); Harper, 392 F.3d at 209; Kaltman-Glasel v. Dooley, 82 F. App'x 244, 245 (2d Cir. 2003); Quinn v. Pipe & Piling Supplies (U.S.A.) Ltd., No. 2:09-cv-161, 2011 WL 672240, at *2 (W.D. Mich. Feb. 18, 2011); Frisby v. Keith D. Weiner & Assocs. Co., LPA, 669 F. Supp. 2d 863, 872 (N.D. Ohio 2009).

When a federal court exercises supplemental jurisdiction, it is bound to apply the choice of law rules of the forum state. Menuskin v. Williams, 145 F.3d 755, 761 (6th Cir. 1998) (citations omitted); accord Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835, 850-51 (N.D. Ohio 2010) (citations omitted).

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). To determine which state has the "most significant relationship," Tennessee courts consider seven principles:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *10 (Tenn. Ct. App. Oct. 8, 2009) (quoting Restatement (Second) of Conflict of Laws § 6 (1971)). When applying these principles, courts must consider four factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." Id. at *11 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). "[T]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

The parties assume that Tennessee law governs Evans' claims sounding in tort. (See, e.g., Mem. in Supp. of Def.'s Mot. for Summ. J. 15-19, ECF No. 45-1 ("Walgreens Mem."); Pl.'s Resp. 19-20.) The alleged injury occurred in Tennessee because Evans is

a Tennessee resident who worked for Walgreens in Tennessee and suffered harm from Walgreens' acts in Tennessee.  The relevant employment relationship between Evans and Walgreens was centered in Tennessee.  No state has a more significant relationship to the litigation than Tennessee.  No relevant principle weighs against applying Tennessee substantive law.  See Timoshchuk, 2009 WL 3230961, at *10.  Although Walgreens is not a Tennessee corporation and does not have its principal place of business in Tennessee, the remaining factors Tennessee courts consider favor applying Tennessee law.  See Hataway, 830 S.W.2d at 59; Timoshchuk, 2009 WL 3230961, at *11.  Therefore, the Court will apply Tennessee substantive law to Evans' claims sounding in tort.

For contract claims, Tennessee follows the rule of lex loci contractus, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent a contrary intent.  Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)).  "If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met": (1) the choice of law provision must be executed in good faith, (2) the chosen jurisdiction must bear a material connection to the transaction,

(3) the basis for the choice of law must be reasonable, and (4) the choice of "another jurisdiction's law must not be 'contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.'" Id. (citations omitted).

The parties assume that Tennessee law governs Evans' breach of contract claims. (See, e.g., Walgreens Mem. 17-19; Pl.'s Resp. 20.) Evans seems to assert, however, that a contract of employment arose from Hoover's alleged promise, made to her while she was a student in North Carolina, that Walgreens would employ her for at least three years because it was providing her with a sign-on bonus. (See Pl.'s Resp. 20; Pl.'s Mot. and Statement of Facts 6.) If such a promise was made, any resulting contract would have been executed in North Carolina, and Tennessee's choice of law rules would require applying North Carolina law. See Vantage Tech., 17 S.W.3d at 650. Therefore, the Court will determine whether Evans' claims sounding in contract can survive Walgreens' summary judgment motion under Tennessee and North Carolina law.

The parties disagree about which state's law governs Walgreens' breach of contract counterclaim. Walgreens argues that Illinois law governs because the relocation incentive payment and sign-on bonus incentive payment contracts between Evans and Walgreens state that they shall be governed by

20

Illinois law.   (See Mem. in Supp. of Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for Breach of Contract 5-7, ECF No. 60-1.)   Evans argues that she did not sign or acknowledge the agreements and that Tennessee law governs. (See Pl.'s Resp. and Mem. in Opp'n to Def.'s Mot. for Summ. J. on Breach of Contract Countercl. 5-11.)   Neither party addresses the significance of any potential agreement formed in North Carolina before Evans moved to Tennessee.   The Court will determine whether Walgreens can survive Evans' motion for summary judgment and is entitled to summary judgment on its breach of contract counterclaim under Tennessee, North Carolina, and Illinois law.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a).   The moving party can meet this burden by pointing out to the court that the respondent,

having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56; Pucci v. Nineteenth Dist. Court, 628 F.3d 752, 759 (6th Cir. 2010). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The district court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be

22

sufficient to justify a jury decision in her favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

"Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999). "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). "But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. (quoting Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, at 488) (emphasis in original);

see also Shakur v. Schriro, 514 F.3d 878, 890 (9th Cir. 2008);
Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002); Cockrel v.
Shelby Cnty. Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001);
cf. Timmer v. Mich. Dep't of Commerce, 104 F.3d 833, 843 (6th
Cir. 1997) ("[I]f the moving party will bear the burden of
persuasion at trial, then that party must support its motion
with credible evidence that would entitle it to a directed
verdict if not controverted at trial.") (citation omitted); 11
James William Moore, Moore's Federal Practice § 56.13[1], at 56-
162 (3d ed. 2010) ("[I]f the movant has the burden of persuasion
on an issue, the movant must make a stronger claim to summary
judgment by introducing supporting evidence that would
conclusively establish movant's right to a judgment after trial
should nonmovant fail to rebut the evidence.").

### IV. Analysis

Walgreens has moved for summary judgment on all claims in
Evans' Complaint. (See Def. Walgreen Co.'s Mot. for Summ. J. 1-
3.) Walgreens has also moved for summary judgment on its breach
of contract counterclaim, and Evans has moved for summary
judgment on Walgreens' breach of contract counterclaim. (See
Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for
Breach of Contract 1-2; Pl.'s Mot. and Statement of Facts 5-15.)

### A. Walgreens' Motion for Summary Judgment on Evans' Claims

24

In her complaint, Evans asserts fourteen counts: (1) violation of 42 U.S.C. § 2000e-2(a)(1), (2) violation of 42 U.S.C. § 2000e-2(a)(2), (3) violation of 42 U.S.C. § 2000e-3(a), (4) violation of 42 U.S.C. § 1981, (5) a request for a declaration that Walgreens' actions constituted discrimination based on her race and sex and that she is entitled to injunctive relief, including reinstatement and back pay, (6) a request for a declaration that she has a contract requiring Walgreens to employ her for at least three years, (7) breach of express contract, (8) breach of implied contract, (9) misrepresentation, (10) defamation, (11) promissory estoppel, (12) negligent infliction of emotional distress, (13) intentional infliction of emotional distress, and (14) a request for attorney's fees. (See Compl. 6-16.) Walgreens asserts that it is entitled to judgment as a matter of law on all of Evans' claims. (See Def. Walgreen Co.'s Mot. for Summ. J. 1-3; Walgreens Mem. 1-20.)

### 1.   Violation of 42 U.S.C. § 2000e-2(a)(1)

Evans argues that Walgreens discriminated against her based on her race and sex in terminating her employment. (See Compl. ¶¶ 30-32.) Evans argues that she "is pursuing her race/gender discrimination claims under both a mixed-motive and pretext theory." (Pl.'s Resp. 12.) She also argues that she was subject to a hostile work environment. (See id. at 18.)

### a)   Race Discrimination

25

"Title VII of the Civil Rights Act of 1964 ["Title VII"] prohibits an employer from 'discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin.'" Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 363 (6th Cir. 2010) (quoting 42 U.S.C. § 2000e-2(a)(1)) (alterations in original).  Under 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

"To defeat a motion for summary judgment in a discrimination case, a plaintiff must adduce direct or circumstantial evidence of discrimination." Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009) (citing DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004)); accord Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009) (citing DiCarlo, 358 F.3d at 414)); see also Younis, 610 F.3d at 363 ("A Title VII plaintiff may satisfy his burden of establishing such discrimination either by presenting direct evidence of discriminatory actions by the defendant or by

26

showing the existence of circumstantial evidence that creates an inference of discrimination.").

"Direct evidence is evidence that, if believed, dictates a finding, with no need to draw inferences, that 'unlawful discrimination was at least a motivating factor in the employer's actions.'" Barrett, 556 F.3d at 515 (quoting Amini v. Oberlin Coll., 440 F.3d 350, 359 (6th Cir. 2006)); accord Younis, 610 F.3d at 363 (citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc)).

"Circumstantial evidence is 'proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.'" Kyle-Eiland v. Neff, 408 F. App'x 933, 939-40 (6th Cir. 2011) (quoting Wexler, 317 F.3d at 570). "Where a plaintiff relies on circumstantial evidence, the McDonnell Douglas burden-shifting framework applies." Barrett, 556 F.3d at 515 (citations omitted); accord Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009) (citation omitted). That framework provides for shifting burdens of proof:

> The burden is first on the plaintiff to demonstrate a prima facie case of race discrimination; it then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext-i.e. that the employer's explanation was fabricated to conceal an illegal motive.

Chen, 580 F.3d at 400 (citation omitted).   "Throughout this
burden-shifting approach, the plaintiff continues to bear the
ultimate burden of proving, by a preponderance of the evidence,
the intent to discriminate."   Wright v. Murray Guard, Inc., 455
F.3d 702, 707 (6th Cir. 2006) (citation omitted).

To demonstrate a prima facie case of discrimination based
on race, a plaintiff must show that:

> (1) he or she was a member of a protected class; (2)
> he or she suffered an adverse employment action; (3)
> he or she was qualified for the position; and (4) he
> or she was replaced by someone outside the protected
> class or was treated differently than similarly-
> situated, non-protected employees.

Wright, 455 F.3d at 707 (quoting DiCarlo, 358 F.3d at 415); see
also Alexander v. Ohio State Univ. Coll. of Social Work, No. 10-
3358, 2011 WL 2535277, at  *4 (6th Cir. June 28, 2011); Thompson
v. UHHS Richmond Heights Hosp., Inc., 372 F. App'x 620, 623 (6th
Cir. 2010).

Evans offers no direct evidence of race discrimination.
Therefore, the Court must consider whether she has offered
sufficient circumstantial evidence of race discrimination to
defeat Walgreens' summary judgment motion.   See Barrett, 556
F.3d at 514.

Evans satisfies the first two elements of her prima facie
case of race discrimination because she is African-American
(Pl.'s Resp. 3) and her employment was terminated (Aff. of

28

Chandra Evans ¶ 17, ECF No. 62-1). See Wright, 455 F.3d at 707. Based on Evans' "evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff," Evans can show that her performance met Walgreens' legitimate expectations at the time of her discharge and thus can satisfy the third element of her prima facie case of race discrimination. See Sokolnicki v. Cingular Wireless, LLC, 331 F. App'x 362, 366 (6th Cir. 2009) (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000)); Vincent v. Brewer Co., 514 F.3d 489, 495 (6th Cir. 2007); (Tibbe Dep. 40:3-23, ECF No. 62-2).

Evans states in an affidavit that "[t]he person to whom I spoke who replaced me at the Walnut Grove Store is Caucasian." (Aff. of Chandra Evans ¶ 24, ECF No. 62-1.) Although that statement is vague, the Court must consider it in the light most favorable to Evans as the non-moving party and draw all reasonable inferences in her favor. See Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011) (citation omitted). The Magistrate Judge denied Walgreens' motion to strike that paragraph. (Order Denying Walgreens Company's Mot. to Strike 12-13, ECF No. 120.) Because a reasonable inference from Evans' statement is that she has direct knowledge that the person who replaced her is Caucasian,

she satisfies the fourth element of her prima facie case of race discrimination. See Wright, 455 F.3d at 707.

Although unnecessary to establish her prima facie case given her evidence that she was replaced by a Caucasian employee, Evans also argues that she has offered evidence that she was treated differently from similarly-situated, non-protected employees. (See Pl.'s Resp. 11-12.) That argument is not well-taken.

"To establish that a non-protected employee is an appropriate comparator, 'the plaintiff [must] demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects.'" Dickens v. Interstate Brands Corp., 384 F. App'x 465, 468 (6th Cir. 2010) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998)). "In the disciplinary context, we have held that this requires that the plaintiff and the proposed comparator have engaged in acts of 'comparable seriousness.'" Id. (quoting Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002). To make that determination, courts consider "certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (quoting Ercegovich, 154 F.3d at 352).

30

"[T]o determine whether two individuals are similarly situated with regard to discipline, we 'make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee.'"  Id. at 469 (quoting Ercegovich, 154 F.3d at 352) (alteration in original).

Evans has offered no evidence that other pharmacists or comparable employees outside her protected class engaged in similar incidents of workplace violence or were treated more favorably.  She provides statistics comparing the treatment of African-American employees who allegedly engaged in incidents of workplace violence during the relevant period to the treatment of Caucasian employees who did so, but gives no evidence that Tibbe and Piela were involved in those incidents or that those incidents involved employees in similar positions.  (See Pl.'s Resp. 11-15.)  Evans has not demonstrated that she was treated differently than similarly-situated, non-protected employees and cannot satisfy the fourth element of her prima facie case on that theory.  See Wright, 455 F.3d at 707.

Because Evans has demonstrated a prima facie case of race discrimination, the burden shifts to Walgreens to offer a legitimate, non-discriminatory explanation for its actions.  See Chen, 580 F.3d at 400.  Walgreens claims that it terminated Evans' employment for violating its workplace violence policy.

31

(See Walgreens Mem. 3-7; Walgreens' Statement of Facts ¶¶ 42-
43.)    That    reason    is    a    legitimate,    non-discriminatory
explanation for terminating Evans' employment.   See, e.g., Jones
v. Potter, 488 F.3d 397, 401, 406 (6th Cir. 2007).   Therefore,
the burden shifts back to Evans to show pretext.   See Chen, 580
F.3d at 400.

"Pretext may be established 'either directly by persuading
the [trier of fact] that a discriminatory reason more likely
motivated   the   employer   or   indirectly   by   showing   that   the
employer's   proffered   explanation   is   unworthy   of   credence.'"
White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir.
2008) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.
248, 256 (1981)).   "A plaintiff will usually demonstrate pretext
by   showing   that   the   employer's   stated   reason   for   the   adverse
employment action either (1) has no basis in fact, (2) was not
the   actual   reason,   or   (3)   is   insufficient   to   explain   the
employer's   action."    Id. at 393 (citation omitted); accord
Alexander, 2011 WL 2535277, at *4; Chen, 580 F.3d at 400; Jones,
488 F.3d at 406.   "However, the plaintiff may also demonstrate
pretext by offering evidence which challenges the reasonableness
of   the   employer's   decision   'to   the   extent   that   such   an   inquiry
sheds   light   on   whether   the   employer's   proffered   reason   for   the
employment action was its actual motivation.'"   White, 533 F.3d
at 393 (quoting Wexler, 317 F.3d at 576).

Evans cannot establish pretext. She has offered no evidence that Walgreens' proffered reason for terminating her employment has no basis in fact, was not the actual reason for her termination, or is insufficient to explain Walgreens' action. She has also offered no evidence suggesting that Walgreens' proffered reason for terminating her employment was not its actual motivation.

Evans was interviewed by Walker and Tibbe and provided a written statement. (See Walgreens' Statement of Facts ¶ 37.) She admitted to "losing it" with Renfroe and being infuriated by his taking her phone. (See id. ¶ 38.) She admitted using profanity and "telling him that she would slap the piss out of him if they were on the street." (Id.) She also admitted stating that "if he had taken her car keys she would have put him on the ground." (Id.) Walgreens has filed a copy of Evans' statement in which she confirmed those statements and wrote that they were "accurate and true to the best of my knowledge." (Statement Given by Chandra M. Evans, ECF No. 45-4.)

Walgreens' workplace violence policy provides that any employee who engages in threatening behavior or violent acts or who makes comments about harming others may be subject to termination of employment. (See Walgreens' Statement of Facts ¶ 5.) It lists "[t]hreatening, intimidating, coercing, or harassing conduct of a verbal, nonverbal, or physical nature" as

examples of conduct violating the policy. (Id.) Evans cannot claim that Walgreens' proffered reason for terminating her employment has no basis in fact. She also cannot demonstrate that Walgreens did not have an honestly-held belief that she violated the workplace violence policy or that Walgreens did not make a reasonably informed and considered decision based on a thorough investigation before terminating Evans' employment for violating that policy. See Allen v. Highlands Hosp. Corp., 545 F.3d 387, 398 (6th Cir. 2008); Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 598-99 (6th Cir. 2007).

Much of the evidence Evans offers to demonstrate pretext is irrelevant. No reasonable jury could conclude that a discriminatory reason motivated Walgreens' actions or that Walgreens' explanation of why it terminated her employment is unworthy of credence based on Evans' evidence that she had never been accused of workplace violence before the incident with Renfroe, Renfroe is taller and bigger, Renfroe did not testify that he felt threatened, Walgreens allegedly did not consider her physical stature relative to Renfroe in determining that Evans' conduct was threatening, and Walgreens suspended her before giving her an opportunity to present her version of the incident. (See Pl.'s Resp. 12-13.) That all of the evidence Walgreens allegedly considered in deciding to terminate Evans came from Walgreens employees does not matter. It also does not

34

matter that Tibbe did not terminate the employment of Renfroe and Davis, who were not similarly-situated to Evans, or that other employees have alleged that Walgreens committed race and gender discrimination and retaliation between 2004 and 2008. Without more detail, it does not matter that Lindfield allegedly "did not care for Plaintiff and was doing what he could to get her out of the store" allegedly because the store is in a predominantly Caucasian neighborhood. (See <u>id.</u> at 11.)

Evans' alleged comparator evidence is also insufficient to demonstrate pretext. (See <u>id.</u> 11-14.) Her evidence does not show that the employees were similarly situated to Evans or were disciplined under similar circumstances. Evans offers no evidence that Tibbe and Piela were involved in the incidents she cites or that any of those incidents involved a pharmacist.

Taken as a whole, no reasonable jury could find that Evans can establish that Walgreens' reason for terminating her employment is pretext. Evans has not raised a genuine issue of material fact about whether Walgreens' proffered legitimate explanation is pretext. Therefore, Walgreens is entitled to summary judgment on Evans' race discrimination claim under 42 U.S.C. § 2000e-2(a)(1). See <u>Chen</u>, 580 F.3d at 402; <u>Abdulnour v. Campbell Soup Supply Co.</u>, 502 F.3d 496, 504 (6th Cir. 2007).

**b)   Sex Discrimination**

"A plaintiff can establish a claim of sex discrimination under Title VII by producing either direct or circumstantial evidence of discrimination." White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 238 (6th Cir. 2005) (citation omitted). When a plaintiff proceeds using circumstantial evidence, the McDonnell-Douglas framework applies. Id. (citation omitted).

To demonstrate a prima facie case of sex discrimination, a plaintiff must show that "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably." Corell v. CSX Transp., Inc., 378 F. App'x 496, 501 (6th Cir. 2010) (citing Peltier v. United States, 388 F.3d 984, 987 (6th Cir. 2004); see also Vincent, 514 F.3d at 494 (citing Peltier, 388 F.3d at 987).

Evans has no direct evidence of sex discrimination and proceeds using circumstantial evidence. Evans satisfies the first and second element because she is a woman and her employment was terminated. See Vincent, 514 F.3d at 494-95; Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 729 (6th Cir. 1999). Evans has offered evidence sufficient to satisfy the third element given Tibbe's testimony that Evans met all expectations. See Vincent, 514 F.3d at 495; (Tibbe Dep. 40:3-23, ECF No. 62-2). Her evidence does not establish that a

similarly-situated, non-protected employee was treated more favorably. She does not, inter alia, offer any evidence that a male employee employed in a similar position engaged in comparable conduct, or that Tibbe and Piela were involved in a decision to discipline such an employee. Renfroe is not an appropriate comparator because he did not threaten another employee with physical violence and he did not have management level authority. Evans is not similarly situated to Renfroe in all relevant respects. See Dickens, 384 F. App'x at 468-69. Therefore, Evans has no evidence that a similarly-situated, non-protected employee was treated more favorably.

Evans also has no evidence that she was replaced by a person outside her protected class. Her affidavit states that "[t]he person to whom I spoke who replaced me at the Walnut Grove Store is Caucasian." (Aff. of Chandra Evans ¶ 24, ECF No. 62-1.) It does not state that the person who replaced her is male. Evans has not directed the Court to any evidence that the person who replaced her was male. Therefore, Evans cannot establish a prima facie case of sex discrimination, and Walgreens is entitled to summary judgment. See Corell, 378 F. App'x at 497, 501-03.

Evans' sex discrimination claim also fails because she cannot establish pretext. Walgreens has met its burden of offering a legitimate, non-discriminatory explanation for

37

terminating Evans' employment: her violation of the workplace violence policy. (<u>See</u> Walgreens Mem. 3-7; Walgreens' Statement of Facts ¶¶ 42-43.) As discussed above, Evans has no evidence that Walgreens' explanation is pretext. Taken as a whole, no reasonable jury could find that Evans can establish that Walgreens' reason for terminating her employment is pretext. Evans has not raised a genuine issue of material fact about whether Walgreens' proffered legitimate explanation is pretext. Walgreens is entitled to summary judgment on Evans' sex discrimination claim under 42 U.S.C. § 2000e-2(a)(1). <u>See</u> <u>Corell</u>, 378 F. App'x at 497, 503-05; <u>Novotny v. Elsevier</u>, 291 F. App'x 698, 704 (6th Cir. 2008).

### c) **Mixed Motive**

"[T]he <u>McDonnell Douglas/Burdine</u> burden-shifting framework does <u>not</u> apply to the summary judgment analysis of Title VII mixed-motive claims." <u>See</u> <u>White</u>, 533 F.3d at 400. "[T]o survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) 'race, color, religion, sex, or national origin was <u>a</u> motivating factor' for the defendant's adverse employment action.'" <u>Id.</u> (quoting 42 U.S.C. § 2000e-2(m)). "This burden of producing some evidence in support of a mixed-motive claim is not onerous

and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim." Id.

"Moreover, as it is irrelevant, for purposes of a summary judgment determination, whether the plaintiff has presented direct or circumstantial evidence in support of the mixed-motive claim, . . . we direct that this summary judgment analysis just described, rather than the McDonnell Douglas/Burdine burden-shifting framework, be applied in all Title VII mixed-motive cases regardless of the type of proof presented by the plaintiff." Id. (internal citation omitted). Therefore, "[t]he only question that a court need ask in determining whether the plaintiff is entitled to submit his claim to a jury in such cases is whether the plaintiff has presented 'sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for' the defendant's adverse employment decision." Id. at 401 (quoting Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003)). "The 'ultimate question' in a mixed-motive analysis is simply 'whether there are any genuine issues of material fact concerning the defendant's motivation for its adverse employment decision, and, if none are present, whether the law . . . supports a judgment in favor of the moving party on the basis of the undisputed facts.'" Spees v. James

Marine, Inc., 617 F.3d 380, 390 (6th Cir. 2010) (quoting White, 533 F.3d at 402).

Here, Evans has produced evidence sufficient to convince a jury that Walgreens took an adverse employment action against her because Walgreens terminated her employment.  See Wright, 455 F.3d at 707; (Aff. of Chandra Evans ¶ 17, ECF No. 62-1). However, she has not produced evidence sufficient to convince a jury that her race or sex was a motivating factor for any of Walgreens' actions.  She offers no evidence that her race or sex was a motivating factor in Walker's investigation; Walker, Tibbe, and Piela's discussions; or Tibbe's decision to terminate her employment.  Evans' conclusory argument that Lindfield "did not care for Plaintiff and was doing what he could to get her out of the store" allegedly because the store is in a predominantly Caucasian neighborhood is not sufficient because she offers no evidence that Lindfield was involved in the decision to terminate her employment or that her race or sex was a reason Lindfield disliked her.  (See Pl.'s Resp. 11.)

Evans' alleged comparator evidence is not sufficient because she gives no indication of the context in which other employees were disciplined, the decisionmakers responsible for the decisions to discipline them, or the status and conduct of the disciplined employees.  Evans has not produced sufficient evidence for a reasonable jury to conclude that the alleged

40

comparators are similarly situated. The treatment of Renfroe and Davis cannot create a jury issue about Walgreens' reasons for terminating Evans' employment because they are not similarly situated to her in that their conduct and status as non-pharmacists and employees without management-level authority are dissimilar to Evans' conduct and status. Because Davis is not alleged to have had any role in the decision to terminate Evans' employment, Davis' racially insensitive remark is not evidence of Walgreens' bias. Evans has offered no evidence that Walgreens' investigation of her alleged misconduct was anything less than thorough and correct. She admitted to "losing it" with Renfroe in her interview with Walker and Tibbe and her written statement, as well as using profanity, "telling him that she would slap the piss out of him if they were on the street," stating that "if he had taken her car keys she would have put him on the ground," and later telling Davis that "you need to stay away from me right now if you know whats [sic] good for you." (See Walgreens' Statement of Facts ¶¶ 37-38; Statement Given by Chandra M. Evans, ECF No. 45-4.)

Taken as a whole, the record is devoid of evidence that could reasonably be construed to support Evans' claim. Evans had not presented sufficient evidence for a reasonable jury to conclude that her race or sex was a motivating factor for Walgreens' actions. No genuine issue of material fact exists as

41

to Walgreens' motivation for its adverse employment decision. The law supports a judgment in Walgreens' favor based on the undisputed facts.  Evans' mixed-motive claim must fail, and Walgreens is entitled to summary judgment on Evans' race and sex discrimination claims.  See Spees, 617 F.3d at 390; White, 533 F.3d at 400-01; see also Graham v. Best Buy Stores, L.P., 298 F. App'x 487, 495 (6th Cir. 2008); Lindsey v. Whirlpool Corp., 295 F. App'x 758, 768 (6th Cir. 2008); Erkins v. Potter, No. 1:09CV059, 2010 WL 5670454, at *3-5 (S.D. Ohio Nov. 15, 2010); Hicks v. Concorde Career Coll., 695 F. Supp. 2d 779, 794-95 (W.D. Tenn. 2010).

### d)   Hostile Work Environment

To prove a hostile work environment claim under Title VII, a plaintiff "needs to show: (1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex or race; (4) the harassment created a hostile work environment; and (5) employer liability." Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 500 (6th Cir. 2009) (citation omitted).

Evans is a member of a protected class because she is African-American and female.  See Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009); Campbell v. CCL Custom Mfg., Inc., No. 03-2789B, 2006 WL 222814, at *5 (W.D. Tenn. Jan. 30, 2006).  Assuming without deciding that she can

establish the second, third, and fifth requirements, Evans cannot demonstrate that any harassment created a hostile work environment.  The basis for her hostile work environment claim is as follows:

> Here, Plaintiff had already met with Steve Walker to report conduct involving store manager Mr. Mascari, who had also been accused of racial and sexual discrimination against another Walgreen[s] employee, assistant manager Ms. Cunningham.  When she reported the conduct to Mr. Walker, he initially had Mascari present in the room as she was trying to report Mascari's discriminatory conduct.  Plaintiff discovered later that Walker chose not to investigate the allegations regarding Mascari.  Walgreen[s] was also aware of the harassment of Plaintiff by store manager Lindfield, who did not want Plaintiff in his store and did things to try to get rid of her.  Walker and others knew about the hostile environment, but did nothing about it.

(Pl.'s Resp. 19.)  Evans also seems to base her claim on Lindfield's being rude to her and playing pranks that she did not like, Mascari's being rude to her on one specific occasion, Davis' comments in her presence, Renfroe's taking her cellular phone, and a pharmacy technician's once gesturing with her middle finger toward her.  (See Walgreens' Statement of Facts ¶ 64; Evans' Resp. to Walgreens' Statement of Facts ¶ 64.)

"[H]ostile-work-environment claims 'involve[] repeated conduct' and require the plaintiff to demonstrate that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'" Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 994 (6th Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16 (2002)). "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000) (citation omitted); see also Thornton v. Fed. Express Corp., 530 F.3d 451, 455 (6th Cir. 2008). "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Bourini v. Bridgestone/Firestone N. Am. Tire, LLC, 136 F. App'x 747, 751 (6th Cir. 2005) (quoting Bowman, 220 F.3d at 463). "The Supreme Court has consistently held that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (quoting Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001)).

44

The evidence Evans presents "fail[s] to raise a triable issue of fact that [Walgreens] was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe and pervasive to alter the conditions of [Evans'] employment and create an abusive working environment." Love v. Electric Power Bd. of Chattanooga, EPB, 392 F. App'x 405, 409 (6th Cir. 2010). The allegedly discriminatory conduct was infrequent, not severe, not physically threatening or humiliating, and consists in part of an offensive utterance on one occasion. It did not unreasonably interfere with Evans' work performance. A reasonable jury could not find that Evans was subjected to a hostile work environment. See, e.g., Barrett, 556 F.3d at 518 ("Upon consideration of the totality of the circumstances, the single comment from [a co-worker], the perceived diversion of desirable work by [a manager], and the receipt of the 'cold shoulder' from a few co-workers is insufficient evidence of severe or pervasive harassment to allow a reasonable jury to find that [an employee] was subjected to a hostile work environment."). Therefore, Walgreens is entitled to summary judgment on Evans' hostile work environment claim. See id.; Ladd, 552 F.3d at 500-02.

### 2.   Violation of 42 U.S.C. § 2000e-2(a)(2)

Under 42 U.S.C. § 2000e-2(a)(2), it is an unlawful employment practice for an employer "to limit, segregate, or

classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

Evans has not produced sufficient evidence for a reasonable jury to conclude that Walgreens violated 42 U.S.C. § 2000e-2(a)(2). No evidence suggests that Walgreens' actions limited, segregated, or classified her so as to deprive her of employment opportunities or adversely affect her status as an employee because of her race or sex. No evidence suggests that Walgreens' actions tended to deprive her of employment opportunities or adversely affected her status as an employee because of her race or sex.

Although Walgreens terminated her employment, as discussed above, Evans has not offered sufficient evidence to create a genuine issue for trial about whether that decision was based on or motivated by her race or sex. To the extent Evans alleges that Walgreens limited and deprived her of employment opportunities and adversely affected her status as an employee by offering to reinstate her if she attended an anger management course and relocated to another store in the East Memphis District (see Compl. ¶ 35), her argument is not well-taken. She offers no evidence that Walgreens treated similarly situated

46

persons who were terminated differently than it treated her or considered her race or sex.   Therefore, Walgreens is entitled to summary judgment on Evans' claim under 42 U.S.C. § 2000e-2(a)(2).   See Pucci, 628 F.3d at 759.

### 3.   Violation of 42 U.S.C. § 2000e-3(a)

"Title VII prohibits retaliation against an employee 'because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' in connection with an allegedly unlawful employment practice." Hunter, 565 F.3d at 995 (quoting 42 U.S.C. § 2000e-3(a)).

"In the absence of direct evidence, retaliation claims are also governed by the McDonnell Douglas burden-shifting framework." Reed v. Metro. Gov't of Nashville & Davidson Cnty., 286 F. App'x 251, 255 (6th Cir. 2008) (citing Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 381 (6th Cir. 2002)).   To establish a prima facie case of retaliation under Title VII using that framework, a plaintiff must demonstrate four elements:

> (1) [she] engaged in activity protected by Title VII;
> (2) this exercise of protected rights was known to
> defendant; (3) defendant thereafter took adverse
> employment action against the plaintiff, or the
> plaintiff was subjected to severe or pervasive
> retaliatory harassment by a supervisor; and (4) there
> was a causal connection between the protected activity
> and the adverse employment action or harassment.

Hunter, 565 F.3d at 995-96; accord Reed, 286 F. App'x at 255. "If the plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." Reed, 286 F. App'x at 255 (citing Burdine, 450 U.S. at 254-56); see also Hunter, 565 F.3d at 996. "The plaintiff may then seek to rebut the evidence by demonstrating that the articulated reason was a mere pretext for discrimination." Reed, 286 F. App'x at 255 (citing Burdine, 450 U.S. at 254-56); see also Hunter, 565 F.3d at 996.

Evans argues that Walgreens retaliated against her because she complained about her suspension and Davis' use of the term "wigger" in her presence. (See Pl.'s Resp. 4, 15.) She argues that Walgreens retaliated by (1) terminating her employment, (2) offering to reinstate her, and (3) demanding that she repay her sign-on bonus. (See id. at 16-18.)

Evans offers no direct evidence of retaliation. Therefore, her retaliation claim is governed by the McDonnell Douglas burden-shifting framework. See Reed, 286 F. App'x at 255. Assuming without deciding that Evans engaged in protected activity by complaining about her suspension and Davis' language, her exercise of protected rights was known to Walgreens, and the three actions she complains of constitute adverse employment actions, Evans' cannot establish a prima

48

facie case of retaliation because she cannot demonstrate a causal connection between her protected activity and any alleged adverse employment action.  See Hunter, 565 F.3d at 996-97.

"To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." Michael, 496 F.3d at 596 (quoting Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)).  "Generally, temporal proximity alone is not enough to establish a causal link." Edmond v. State of Tenn. Dep't of Prob. & Parole, 386 F. App'x 507, 514 (6th Cir. 2010) (citations omitted).  However, temporal proximity may suffice to establish a causal link in limited circumstances:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.  But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008) (citing Little v. BP Exploration & Oil Co., 265 F.3d 357, 365 (6th Cir. 2001)); accord Grubb v. YSK Corp., 401 F. App'x 104, 112 (6th Cir. 2010) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse

49

employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." (quoting DiCarlo, 358 F.3d at 421)).

The reason temporal proximity is sometimes sufficient is that "if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." Mickey, 516 F.3d at 525. "Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action." Id. Such circumstances arise "in rare cases." Id.; accord Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 401 (6th Cir. 2010) ("[W]e have rarely found a retaliatory motive based only on temporal proximity."); Evans v. Prospect Airport Servs., Inc., 286 F. App'x 889, 895 (6th Cir. 2008) (stating that temporal proximity is sufficient "in a small subset of cases").

"Beyond temporal proximity, other indicia of retaliatory conduct would include evidence that the plaintiff was treated differently, either less positively or more negatively, than similarly situated employees who had not exercised Title VII rights, or evidence that the plaintiff was subjected to closer

50

disciplinary scrutiny after exercising Title VII rights." Novotny, 291 F. App'x at 705 (quoting Evans, 286 F. App'x at 895).

Evans argues that "[i]t is also clear that there was a causal connection between the protected activity and the adverse employment action or harassment, as Walgreen[s] fired Plaintiff just a few days after she complained." (Pl.'s Resp. 15-16.) Because she offers no other evidence of causation, Evans bases her theory of causation solely on temporal proximity. This is not a case in which temporal proximity can establish a causal link between her complaint and any adverse employment actions. Although her employment was terminated soon after she complained, "Title VII does not 'clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, or uncivil conduct in dealing with her colleagues.'" Stein v. Kent State Univ., No. 98-3278, 1999 WL 357752, at *8 (6th Cir. May 11, 1999) (quoting Garvey v. Dickinson Coll., 775 F. Supp. 788, 797 (M.D. Pa. 1991)). According to Evans' account, the incident with Renfroe occurred before Davis made her comments in Evans' presence. (See Pl.'s Resp. 4; Aff. of Chandra Evans ¶¶ 10-11, ECF No. 62-1.) Walker began investigating Evans' incident with Renfroe and interviewing witnesses on December 13, 2007, the same day he learned about the incident. (See Walgreens' Statement of Facts

51

¶¶ 18-20.)   Evans contacted Walgreens' employee relations department to complain of her allegedly improper suspension and Davis' comment around the time Walker began investigating her alleged misconduct.  (See, e.g., Pl.'s Resp. 4; Aff. of Chandra Evans ¶¶ 11-12, ECF No. 62-1.)   She admitted the conduct Walgreens found to violate its workplace violence policy.  (See Walgreens' Statement of Facts ¶¶ 37-38; Statement Given by Chandra M. Evans, ECF No. 45-4.)

Evans has not offered sufficient evidence to raise an inference that her protected activity was the likely reason for Walgreens' alleged adverse actions.   See Michael, 496 F.3d at 596.   Her protected activity did not clothe her with immunity for the incident with Renfroe.   See, e.g., Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 676 (7th Cir. 2011) (concluding that, where two supervisors had discussed ways to discipline an employee before the employee engaged in protected activity, the employee could not establish causation based on her being forced to resign soon after her protected activity); Simpson v. Vanderbilt Univ., 359 F. App'x 562, 571 (6th Cir. 2009) (concluding that a plaintiff had failed to establish a causal connection between informal complaints and his termination where the conduct resulting in his termination occurred before most of his complaints and his employer was already investigating his conduct when he complained).   There is

52

no reason to deviate from the principle that "[g]enerally, temporal proximity alone is not enough to establish a causal link." Edmond, 386 F. App'x at 514. Because no reasonable jury could conclude that there was a causal connection between any protected activity and any adverse employment action, Evans has failed to establish a prima facie case of retaliation. See Hunter, 565 F.3d at 989-90, 995-97. Walgreens is entitled to summary judgment on Evans' claim that Walgreens violated 42 U.S.C. § 2000e-3(a). See id.

Even if Evans could establish a prima facie case, Walgreens would be entitled to summary judgment because she cannot demonstrate pretext. As discussed above, Walgreens has articulated a legitimate, non-discriminatory reason for terminating Evans' employment: Evans' violation of Walgreens' workplace violence policy. (See Walgreens' Statement of Facts ¶¶ 42-43.) Walgreens has offered a legitimate, non-discriminatory reason for offering to reinstate Evans if she attended an anger management course and relocated to another store: Evans' incident with Renfroe. (See, e.g., id. ¶¶ 42, 50.) Walgreens has offered a legitimate, non-discriminatory reason for demanding that Evans repay her sign-on bonus: an alleged contract requiring her to remain employed for three full years of continuous service to avoid having to repay the bonus. (See id. ¶¶ 57, 62-63.)

53

Evans has no evidence that any of Walgreens' reasons are pretext. Evans "must produce evidence that either the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." Ladd, 552 F.3d at 502 (citation omitted). She has not done so because, inter alia, Walgreens acted on an honest belief in its non-discriminatory reasons and made reasonably informed and considered decisions and Evans has no evidence that Walgreens did not request other pharmacists who did not remain employed for three years to repay their sign-on bonuses. Because Evans cannot demonstrate pretext, Walgreens is entitled to summary judgment on Evans' claim that Walgreens violated 42 U.S.C. § 2000e-3(a). See id. at 502-03.

### 4. Violation of 42 U.S.C. § 1981

Evans alleges that Walgreens deprived her "of the post employment protection as outlined in 42 U.S.C. § 1981 and equal protection of the laws as guaranteed her by the Fourteenth Amendment to the United States Constitution." (Compl. ¶ 47.) She also alleges that "[t]he acts and failure to act of the Defendant were proscribed by 42 U.S.C. § 1981 to protect post employment discrimination which the Defendant violated when it treated the Plaintiff less favorably than similarly situated people." (Id. ¶ 48.)

54

To the extent Evans argues that Walgreens violated her
Fourteenth Amendment rights, her claim fails because Walgreens
is a private employer.  See Bradley v. Lockheed Martin Corp.,
275 F. App'x 396, 397 (5th Cir. 2008) (per curiam); Timmer, 104
F.3d at 838 n.7; Trigg v. Fort Wayne Cmty. Sch., 766 F.2d 299,
301 n.4 (7th Cir. 1985); Sarich v. Bank One Corp., No.
4:04CV0984, 2005 WL 2233268, at *11 (N.D. Ohio Sept. 12, 2005).

"[Section 1981] prohibits intentional race discrimination
in the making and enforcing of contracts involving both public
and private actors." Amini, 440 F.3d at 358 (citation omitted).
"The statute's protection extends to 'the making, performance,
modification, and termination of contracts, and the enjoyment of
all benefits, privileges, terms, and conditions of the
contractual relationship.'" Id. (quoting 42 U.S.C. § 1981(b)).
"In order to establish a claim for racial discrimination under
section 1981, a plaintiff must plead and prove that (1) [she]
belongs to an identifiable class of persons who are subject to
discrimination based on their race; (2) the defendant intended
to discriminate against [her] on the basis of race; and (3) the
defendant's discriminatory conduct abridged a right enumerated
in section 1981(a)." Id. (citation omitted).

"[T]he 'intent' element of the claim can be established
either by direct evidence or inferentially." Id. (citation
omitted).   "When a claimant seeks to prove intentional

55

discrimination inferentially in a section 1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in" McDonnell Douglas and Burdine.  Id.; accord White, 533 F.3d at 391; Michael, 496 F.3d at 593; see also Noble v. Brinker Int'l, Inc., 391 F.3d 715, 720 (6th Cir. 2004) ("The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." (quoting Johnson v. Univ. of Cincinnati, 215 F.3d 561, 573 n.5 (6th Cir. 2000))).  "Under that framework, the plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence." Quinn-Hunt v. Bennett Enters., Inc., 211 F. App'x 452, 456 (6th Cir. 2006) (citation omitted).  "If the plaintiff successfully proves a prima facie case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employe[e]'s discharge.'"  Id. (citation omitted).  "Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence 'that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.'" Id. (citation omitted).

Here, Evans has no direct evidence that Walgreens intended to discriminate against her on the basis of race.  Therefore, her § 1981 claim is subject to the McDonnell Douglas and Burdine

burden-shifting framework.  See Amini, 440 F.3d at 358.  For the reasons discussed above, she cannot demonstrate that Walgreens' reason for terminating her employment is pretext for racial discrimination.  She has offered no evidence that Walgreens' proffered reason for terminating her employment has no basis in fact, was not the actual reason for her termination, or is insufficient to explain Walgreens' action.  She has also offered no evidence suggesting that Walgreens' proffered reason for terminating her employment was not its actual motivation.

To the extent she argues that Walgreens' offer of reinstatement and demand that she repay her sign-on bonus violated her § 1981 rights, she has no evidence that Walgreens intended to discriminate against her on the basis of her race. Assuming she can establish a prima facie case on those claims, she cannot demonstrate that Walgreens' reasons for those actions are pretext.  A reasonable jury could not conclude that Walgreens intended to discriminate against Evans based on her race.  Therefore, Walgreens is entitled to summary judgment on Evans' claims under 42 U.S.C. § 1981.[19]  See id. at 360-61.

### 5. Request for Declaratory Relief as to Discrimination

---

[19] Because Evans cannot demonstrate pretext and Walgreens is entitled to summary judgment on that ground, the Court need not consider Walgreens' argument that some of Evans' claims are untimely under the relevant statute of limitations. (See Walgreens Mem. 8-10.)

In Count V, Evans requests a declaration that Walgreens discriminated against her based on her race and sex and that she is entitled to injunctive relief for Walgreens' discrimination. (See Compl. ¶ 51.)  A plaintiff is not entitled to declaratory relief in the absence of a viable claim.  See Weiner v. Klais & Co., Inc., 108 F.3d 86, 92 (6th Cir. 1997) ("With regard to Count IV, in which plaintiff seeks declaratory relief, plaintiff has merely asserted a form of relief, not a cause of action. Plaintiff is not entitled to this relief in the absence of a viable claim."); see also In re Joint E. & S. Dist. Asbestos Litig., 14 F.3d 726, 731 (2d Cir. 1993) ("The Declaratory Judgment Act does not expand jurisdiction.  Nor does it provide an independent cause of action.  Its operation is procedural only—to provide a form of relief previously unavailable. Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."); Arreola v. Wells Fargo Home Mortg., No. 2:10-cv-3272, 2011 WL 1205249, at *4 (E.D. Cal. Mar. 29, 2011) ("A claim for declaratory or injunctive relief is not a separate cause of action and plaintiffs are not entitled to such relief absent a viable claim.") (citation omitted).  Therefore, Evans' request for declaratory relief in Count V must fail, and Walgreens is entitled to summary judgment on Count V.

58

**6. Request for Declaratory Relief as to Contract**

In Count VI, Evans requests a declaration that she has a contract with Walgreens that forbids Walgreens from unilaterally terminating her employment, binds the parties "for a minimum period of three (3) years," and relieves Evans of any obligation to return any benefits provided given Walgreens' conduct. (Compl. ¶ 56.) As discussed below, Evans has no viable claim that she has a contract forbidding Walgreens from unilaterally terminating her employment. Because she has no viable claim, her request for declaratory relief in Count VI must fail and Walgreens is entitled to summary judgment on Count VI. See Weiner, 108 F.3d at 92.

**7. Breach of Express Contract**

Evans argues that Walgreens is liable for breach of express contract. (See Compl. ¶¶ 57-62; Pl.'s Resp. 20.) The Court will determine whether Evans' breach of contract claims can survive Walgreens' summary judgment motion under Tennessee and North Carolina law because, although the parties assume that Tennessee law governs her breach of contract claims, Evans seems to assert that a contract of employment arose from a promise to her while she was a student in North Carolina.

Tennessee and North Carolina presume that employment relationships are at will. See Kurtzman v. Applied Analytical

59

Indus., Inc., 493 S.E.2d 420, 422 (N.C. 1997); Cummings Inc. v.
Dorgan, 320 S.W.3d 316, 332 (Tenn. Ct. App. 2009). Under North
Carolina law, "in the absence of a contractual agreement between
an employer and an employee establishing a definite term of
employment, the relationship is presumed to be terminable at the
will of either party without regard to the quality of
performance of either party," subject to limited exceptions such
as contracts specifying a definite period of employment,
terminations based on impermissible considerations, and
terminations contrary to public policy. Kurtzman, 493 S.E.2d at
422 (citations omitted). "Tennessee has long adhered to the
common law employment-at-will doctrine, which provides that an
employment contract for an indefinite term is terminable at the
will of either the employer or the employee for any cause or for
no cause," subject to exceptions where an employee is discharged
contrary to a well-defined and established public policy. Guy
v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 534-35 (Tenn. 2002)
(citations omitted).

Evans admits that she signed an employment application
stating that her employment was at will and that no Walgreens
agent other than its Chief Executive Officer had authority to
change her status as an at will employee. In its statement of
undisputed facts, Walgreens states:

The Employment Application signed by Plaintiff stated that any employment between Plaintiff and Walgreen Co. would be on an at-will basis:

> My employment with Walgreens is for no definite period and may be terminated at any time, with or without cause, and without any previous notice, at the option of Walgreens or me. I further understand that no employee, manager, or other agent or representative of Walgreens, other than the Chief Executive Officer, has any authority to enter any agreement or amendment contrary to the foregoing.

(Walgreens' Statement of Facts ¶ 9.) Walgreens properly supported that statement by citing Evans' employment application, which is in the record as an exhibit to Evans' deposition and Tibbe's affidavit. (See id.; Ex. 4, ECF No. 45-6; Ex. 1, ECF No. 45-3.)

The version of the local rules in effect when Walgreens' summary judgment motion was filed and Evans responded provided that, to dispute a material fact, a party "shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." W.D. Tenn. Civ. R. 7.2(d)(3). The current local rules provide that a party opposing a motion for summary judgment must respond to each fact set forth by the movant by agreeing that the fact is undisputed, agreeing that the fact is undisputed for the purpose of ruling

on the summary judgment motion, or demonstrating that the fact is disputed.  W.D. Tenn. Civ. R. 56.1(b).  Each disputed fact must be supported by specific citation to the record.  <u>Id.</u>  If a party does not properly dispute a factual assertion under the local rules, that factual assertion is admitted.  <u>See</u> <u>Akines</u>, 512 F. Supp. 2d at 1147-48.

Evans responded to Walgreens' factual assertion by stating, "[a]s to Paragraph 9, Plaintiff did not sign this alleged employment application.  Additionally, the deponent, Tibbe, has no personal knowledge as to the preparation of this obviously falsified document."  (Evans' Resp. to Walgreens' Statement of Facts ¶ 9.)  In support, Evans cites "Affidavit of Chandra Evans at 4."  (<u>Id.</u> at 2.)  Evans does not state that she did not sign the employment application in paragraph 4, on page 4, or anywhere else in her affidavit.  (<u>See</u> Aff. of Chandra Evans, ECF No. 62-1.)  She asserts in paragraph 4, "The first time I saw the alleged written <u>bonus document</u> was during the course of this litigation.  I did not sign or acknowledge this agreement." (<u>Id.</u> ¶ 4 (emphasis added).)  Evans' alleged employment application and bonus agreements are separate documents.  (<u>See</u> Ex. 1, ECF No. 45-3; Ex. 2, ECF No. 45-3; Ex. 3, ECF No. 45-3.) Because they are separate documents and Evans has not cited any admissible evidence that she did not sign the employment application, Evans has not properly disputed Walgreens' factual

assertion under the local rules.    Therefore, she admits Walgreens' factual assertion.    See Akines, 512 F. Supp. 2d at 1147-48.

Because the application Evans signed provides that she is an employee at will, Walgreens had a right to terminate her employment without cause and without regard to the quality of her performance.    See Kurtzman, 493 S.E.2d at 422; Gillis v. Montgomery Cnty. Sheriff's Dep't, 663 S.E.2d 447, 449 (N.C. Ct. App. 2008); Guy, 79 S.W.3d at 534-35; Cummings Inc., 320 S.W.3d at 332.   No exceptions to the employment at will doctrine under Tennessee or North Carolina law apply in this case.    Evans has not directed the Court to any statement in Walgreens' manuals or handbooks that overrides the presumption that her employment is at will.    See, e.g., Johnson v. Mayo Yarns, Inc., 484 S.E.2d 840, 843 (N.C. Ct. App. 1997) ("This Court has previously rejected claims that an employee termination violated a contract allegedly embodied in an employment handbook, holding that such policy documents do not constitute a contract unless expressly made part of the employment contract.") (citations omitted); Ussery v. City of Columbia, 316 S.W.3d 570, 578 (Tenn. Ct. App. 2009) ("In order to constitute a contract . . . the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions.    Unless an employee handbook contains such guarantees or binding commitments, the

handbook will not constitute an employment contract.") (citations omitted); Reinshagen v. PHP Cos., No. E2001-00025-COA-R3-CV, 2001 WL 1422140, at *4 (Tenn. Ct. App. Nov. 14, 2001) ("In order to show there is an employment contract, the employer must use specific language which guarantees employment for a definite term.") (citation omitted). Walgreens is entitled to summary judgment on Evans' breach of express contract claim. See Pucci, 628 F.3d at 759.

Even if a contract existed, Walgreens would be entitled to summary judgment. Tennessee law provides that "even where an employment agreement is for a definite term, the employer may nevertheless discharge the employee for just cause," and Tennessee courts assume that employers retain the right to terminate employees' employment for just cause even where employment agreements are unambiguous. Maness v. Collins, No. W2008-00941-COA-R3-CV, 2010 WL 4629614, at *8 (Tenn. Ct. App. Nov. 17, 2010) (citations omitted). North Carolina law makes a similar assumption. See, e.g., Mortensen v. Magneti Marelli U.S.A., Inc., 470 S.E.2d 354, 356 (N.C. Ct. App. 1996) (stating that if an employment agreement provides that employment will be permanent or for life and the employee gives independent valuable consideration other than his services for the position, "the employment can be terminated only for cause until the passage of a reasonable time").

64

Here, Evans admitted through her interview with Walker and Tibbe and her written statement about the incident with Renfroe to "losing it" with Renfroe, using profanity, "telling him that she would slap the piss out of him if they were on the street," and stating that "if he had taken her car keys she would have put him on the ground." (Walgreens' Statement of Facts ¶¶ 37-38; Statement Given by Chandra M. Evans, ECF No. 45-4.) A reasonable jury could only conclude that such conduct constitutes just cause for termination. As discussed above, a reasonable jury could not conclude that any impermissible considerations tainted Walgreens' decision to terminate Evans' employment. Walgreens would be entitled to summary judgment under Tennessee and North Carolina law on Evans' breach of express contract claim even if a contract existed.[20] See Pucci, 628 F.3d at 759.

### 8.   Breach of Implied Contract

Evans argues that Walgreens is liable for breach of implied contract. (See Compl. ¶¶ 63-68; Pl.'s Resp. 20.) As discussed above, Evans signed an application stating that her employment was at will. Because her employment was at will, Evans had no guarantee of a definite period of employment. See Kurtzman, 493 S.E.2d at 422; Gillis, 663 S.E.2d at 449; Guy, 79 S.W.3d at 534-

---

[20] Because Walgreens is entitled to summary judgment on Evans' breach of express contract claim for at least two independent reasons, the Court need not consider whether Walgreens is also entitled to summary judgment under the statute of frauds under Tennessee and North Carolina law.

35; <u>Cummings Inc.</u>, 320 S.W.3d at 332.   Evans has not offered evidence that she had an implied contract with Walgreens sufficient to overcome the presumption under Tennessee and North Carolina law that her employment was at will.   See <u>Kurtzman</u>, 493 S.E.2d at 422; <u>Cummings Inc.</u>, 320 S.W.3d at 332.

Even if an implied contract existed, Evans has offered no evidence that her termination violated any provision in the implied contract that Walgreens would not discriminate against her based on her race or gender, would treat employees fairly and equally, would give employees an equal opportunity for career growth and employment, and would address all employee-related problems in a fair, equitable, and non-discriminatory manner.   A reasonable jury could not conclude that Walgreens breached any implied contract because, as discussed above, a reasonable jury could only conclude that Evans' employment was terminated for just cause, an implied provision in employment agreements.   See, e.g., <u>Mortensen</u>, 470 S.E.2d at 356; <u>Maness</u>, 2010 WL 4629614, at *8.   Walgreens is entitled to summary judgment on Evans' breach of implied contract claim.   See <u>Pucci</u>, 628 F.3d at 759.

### 9.   Misrepresentation

Evans argues that Walgreens is liable for
misrepresentation.[21] (See Compl. ¶¶ 69-72; Pl.'s Resp. 19.) In
Tennessee, "the terms 'intentional misrepresentation,'
'fraudulent misrepresentation,' and 'fraud' are synonymous."
Cato v. Betts, No. M2009-02204-COA-R3-CV, 2011 WL 579153, at *6
n.6 (Tenn. Ct. App. Feb. 17, 2011) (citations omitted). A claim
for intentional misrepresentation has six elements:

> (1) the defendant made a representation of an existing
> or past fact; (2) the representation was false when
> made; (3) the representation was in regard to a
> material fact; (4) the false representation was made
> either knowingly or without belief in its truth or
> recklessly; (5) plaintiff reasonably relied on the
> misrepresented material fact; and (6) plaintiff
> suffered damage as a result of the misrepresentation.

Stanfill v. Mountain, 301 S.W.3d 179, 188 (Tenn. 2009) (quoting
Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311
(Tenn. 2008)). "Similarly, to succeed on a claim for negligent
misrepresentation, a plaintiff must establish 'that the
defendant supplied information to the plaintiff; the information
was false; the defendant did not exercise reasonable care in
obtaining or communicating the information[;] and the plaintiffs
justifiably relied on the information.'" Walker, 249 S.W.3d at
311 (quoting Williams v. Berube & Assocs., 26 S.W.3d 640, 645
(Tenn. Ct. App. 2000)).

---

[21] Evans implies she is seeking to recover for intentional misrepresentation,
but asserts a count for "misrepresentation." (See Compl. at 13.)

"Justifiable reliance . . . is a necessary element in a cause of action based upon negligent or fraudulent misrepresentation." Homestead Grp., LLC v. Bank of Tenn., 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009) (citation omitted). "A false representation alone does not amount to fraud; there must be a showing by plaintiff that the representation was relied on by him or her, and that the reliance was reasonable under the circumstances." Id. (citation omitted). "Justifiable reliance is not blind faith and there is no duty to disclose a fact if ordinary diligence would have revealed it." Id. (citation omitted).

Evans' misrepresentation claim seems to be based on Hoover's "ma[king] promises to Plaintiff to convince her to move to Memphis and then fir[ing] her, thus reneging on the promises." (See Pl.'s Resp. 19.) According to Evans, Hoover promised that "she would work in the East district of Memphis for three (3) years once she arrived in Memphis. Hoover never told Plaintiff that there was any expectation that any compensation provided to her would ever have to be repaid." (Id. at 3.) Evans states that, based on Hoover's promises, she "chose to uproot from her family and move to Memphis to work with Walgreen[s]." (Id.)

As discussed above, Evans admits that she signed an employment application stating that her employment was at will

68

and that no Walgreens agent other than its Chief Executive Officer had authority to change her status as an at will employee. Based on her admission, Evans cannot demonstrate that she reasonably or justifiably relied on Hoover's alleged misrepresentation that she would work for Walgreens for three years. Such reliance would not be reasonable under the circumstances given that she admits that the application she signed provided that her employment was for no definite period and could be terminated without cause at any time and that no agent of Walgreens other than its Chief Executive Officer had authority to amend her status as an at-will employee. (See Walgreens' Statement of Facts ¶ 9.) Evans also has no evidence that the representation that she would work for three years was false when made, that the representation was made either knowingly or without belief in its truth or recklessly, or that Walgreens did not exercise reasonable care in obtaining or communicating the information. Evans has not come forward with specific facts showing that there is a genuine issue for trial. Therefore, Walgreens is entitled to summary judgment on Evans' misrepresentation claim. See Pucci, 628 F.3d at 759.

To the extent Evans' misrepresentation claim is based on Hoover's alleged promise that there was no expectation that any compensation would have to be repaid, her claim must also fail. She offers no evidence that the representation was false when

made, the representation was made either knowingly or without belief in its truth or recklessly, or that Walgreens did not exercise reasonable care in obtaining or communicating the information. Because Evans has not come forward with specific facts showing that there is a genuine issue for trial, Walgreens is entitled to summary judgment. See id.

Walgreens is entitled to summary judgment for another reason: Evans' misrepresentation claim is barred under Tennessee's statute of limitations. "[A]n economic loss sustained by a plaintiff from fraud or misrepresentation is an 'injury to personal property' requiring the application of the three-year statute of limitations." Moorhead v. Allman, No. M2009-01822-COA-R3-CV, 2011 WL 676017, at *5 (Tenn. Ct. App. Feb. 24, 2011) (quoting Vance v. Schulder, 547 S.W.2d 927, 932 (Tenn. 1977)). However, the Tennessee Court of Appeals has concluded that, where a plaintiff does not have a protected property interest, a three-year statute of limitations does not apply. See Sudberry v. Royal & Sun Alliance, No. M2005-00280-COA-R3-CV, 2006 WL 2091386, at *5 (Tenn. Ct. App. July 27, 2006). In Sudberry, the plaintiff sought to recover damages flowing from the termination of his employment. Id. at *3. The Tennessee Court of Appeals found that, "[W]here the employment relationship is for a definite term, i.e. not terminable at will, then an interest in an employment contract is damaged

70

thereby triggering the three (3) year period of Tenn. Code Ann. § 28-3-105." Id. at *5. "Otherwise, if the employment relationship is not for a definite term and/or is terminable at will then no property interest in future employment exists to be damaged thus falling under injury to the person pursuant to Tenn. Code Ann. § 28-3-104." Id.; see also Stratton v. Wommack, 230 F. App'x 491, 495 n.5 (6th Cir. 2007). "Tennessee Code Annotated § 28-3-104(a)(1) provides that actions for 'injuries to the person' must be commenced within one year after the cause of action accrued." Sudberry, 2006 WL 2091386, at *2; see Tenn. Code Ann. § 28-3-104(a)(1).

Evans has no evidence to overcome the presumption that she is an at will employee. Because she seeks damages flowing from the termination of her employment and her employment relationship was not for a definite term and was terminable at will, she had no property interest in future employment. She is seeking damages for injuries to her person, not economic loss. Therefore, she is subject to the one-year statute of limitations for injuries to the person. See Sudberry, 2006 WL 2091386, at *1, 5. Evans' employment was terminated on December 20, 2007. (See Walgreens' Statement of Facts ¶ 43; Evans' Resp. to Walgreens' Statement of Facts ¶ 43.) Walgreens sent Evans a letter and invoice requesting repayment of her bonuses on January 15, 2008. (See Counter/Plaintiff's Concise Statement of

71

Undisputed Material Facts in Supp. of Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for Breach of Contract ¶¶ 21-22 ("Walgreens' Statement of Facts in Supp. of Countercl."), ECF No. 44-2; Pl.'s Resp. 6; Letter, ECF No. 45-3.) Evans did not file this action until July 31, 2009. (See Compl.)

The discovery rule does not apply because Evans had information more than one year before she filed her action that would place a reasonable person on inquiry notice that she might have a cause of action. See Estate of Morris v. Morris, 329 S.W.3d 779, 783 (Tenn. Ct. App. 2009) (citation omitted). Evans knew or in the exercise of reasonable care and diligence should have discovered that she has sustained an injury as a result of Walgreens' allegedly wrongful or tortious conduct more than one year before filing her action. Walgreens is entitled to summary judgment because Evans' misrepresentation claim is time-barred under Tennessee's statute of limitations. See Sudberry v. Royal & Sun Alliance, No. M2008-00751-COA-R3-CV, 2008 WL 4466487, at *1, 6, 9 (Tenn. Ct. App. Oct. 3, 2008).

### 10. Defamation

Evans argues that Walgreens is liable for defamation. (See Compl. ¶¶ 73-77; Pl.'s Resp. 20.) Her defamation claim seems to be that statements "regarding [her] alleged 'anger management problem,' 'threatening' demeanor, and the cause for her

termination were false and maliciously made." (See Compl. ¶ 74.)

Evans' defamation claim is time-barred under Tennessee's statute of limitations. "The law of defamation includes both slander, which is spoken, and libel, which is written." Watson v. Fogolin, No. M2009-00327-COA-R3-CV, 2010 WL 1293797, at *4 (Tenn. Ct. App. Apr. 1, 2010) (citation omitted). "The basis for a defamation claim is a statement, whether spoken or written, that has caused injury to the plaintiff's character and reputation." Id. (citation omitted). "Tennessee courts have long recognized libel as the 'greater wrong,' and that recognition is evident in Tennessee's differing statutes of limitations for slander and libel." Id. (citation omitted). "Under Tenn. Code Ann. § 28-3-103, an action for slander must 'be commenced within six (6) months after the words are uttered.'" Id. (quoting Tenn. Code Ann. § 28-3-103). "Under Tenn. Code Ann. § 28-3-104 . . . an action for libel must 'be commenced within one (1) year after the cause of action accrued.'" Id. (quoting Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 821 (Tenn. 1994)).

Here, Evans has offered no evidence that Walgreens made a defamatory statement within one year of her filing an action against Walgreens. Evans was aware of Walgreens' allegedly defamatory statements more than one year before filing her

73

action.   She accused Walgreens of defamation before March 3,
2008.   (See Ex. 6, ECF No. 45-6, at 32, 37.)   She filed her
action on July 31, 2009.   Evans had information more than one
year before she filed her action that would place a reasonable
person on inquiry notice that she might have a cause of action
for defamation.   The discovery rule does not apply.   See Estate
of Morris, 329 S.W.3d at 783.   Evans knew or in the exercise of
reasonable care and diligence should have discovered that she
had sustained an injury as a result of Walgreens' allegedly
wrongful or tortious conduct more than one year before filing
her action.   Therefore, Walgreens is entitled to summary
judgment on Evans' defamation claim because it is time-barred
under Tennessee's statute of limitations.   See Watson, 2010 WL
1293797, at *4-5.

Walgreens is also entitled to summary judgment because a
reasonable jury could not return a verdict in Evans' favor on
her defamation claim.   "The basis for an action for defamation,
whether it be slander or libel, is that the defamation has
resulted in an injury to the person's character and reputation."
Kersey v. Wilson, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at
*3 (Tenn. Ct. App. Dec. 29, 2006) (quoting Davis v. The
Tennessean, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001)).   To
establish a prima facie case of defamation, a plaintiff must
show that (1) "a party published a statement; (2) "with

74

knowledge that the statement is false and defaming to the other"; or (3) "with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999) (citation omitted).

Evans has no evidence that Walgreens made a false statement with knowledge that the statement was false or that Walgreens made any statement with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. Therefore, Walgreens is entitled to summary judgment on Evans' defamation claim. See Pucci, 628 F.3d at 759.

## 11. Promissory Estoppel

Evans argues that Walgreens is liable under promissory estoppel. (See Compl. ¶¶ 78-80; Pl.'s Resp. 19.) Her claim seems to be based on promises Hoover allegedly made to convince her to move to Memphis, including that "she would work in the East district of Memphis for three (3) years once she arrived in Memphis." (Pl.'s Resp. 3.)

"[P]romissory estoppel is an equitable action based on a quasi-contractual theory, and is therefore not independent of the employment at will doctrine." Rampy v. ICI Acrylics, Inc., 898 S.W.2d 196, 211 (Tenn. Ct. App. 1994). It sounds in contract. See id. ("Plaintiff is in error . . . when she states

that promissory estoppel is a claim which sounds in tort, and therefore is a separate cause of action aside from the doctrine of employment at will."); see also Frankenbach v. Rose, No. M2002-02073-COA-R3-CV, 2004 WL 221319, at *1 (Tenn. Ct. App. Feb. 3, 2004) (listing promissory estoppel as an action in contract). The Court will evaluate Evans' promissory estoppel claim under Tennessee and North Carolina law.

"[T]he clear law in North Carolina prohibits the use of promissory estoppel in an offensive manner." Crosby v. City of Gastonia, 682 F. Supp. 2d 537, 547 (W.D.N.C. 2010) (citations omitted); see also Williamson v. Carolina Power & Light Co., 754 F. Supp. 2d 787, 793 (E.D.N.C. 2010) ("North Carolina does not recognize the doctrine of promissory estoppel in actions for breach of an employment contract.") (citation omitted); Giuliani v. Duke Univ., No. 1:08CV502, 2009 WL 1408869, at *5 (M.D.N.C. May 19, 2009) ("North Carolina does not recognize affirmative claims of promissory estoppel; thus, Defendants are entitled to a judgment on the pleadings.") (citation omitted); Home Electric Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co., 358 S.E.2d 539, 545 (N.C. Ct. App. 1987) (stating that the doctrine of promissory estoppel "has only been permitted in North Carolina for defensive relief"). Evans' promissory estoppel claim must fail under North Carolina law.

Evans' promissory estoppel claim is time-barred under
Tennessee's statute of limitations.   As discussed above, her
alleged injury is to her person because she cannot overcome the
presumption that she is an at will employee.   See Sudberry, 2008
WL 4466487, at *1, 6, 9.   Tennessee's one-year statute of
limitations applies.   See id. at *9.   Her cause of action
accrued more than one year before she filed an action against
Walgreens.   Evans had information more than one year before she
filed her action that would place a reasonable person on inquiry
notice that she might have a cause of action for promissory
estoppel.   The discovery rule does not apply.   See Estate of
Morris, 329 S.W.3d at 783.   Evans knew or in the exercise of
reasonable care and diligence should have discovered that she
had sustained an injury as a result of Walgreens' allegedly
wrongful or tortious conduct more than one year before filing
her action.   Therefore, Walgreens is entitled to summary
judgment on Evans' promissory estoppel claim because it is time-
barred under Tennessee's statute of limitations.   See Sudberry,
2008 WL 4466487, at *1, 6, 9.

Walgreens is also entitled to summary judgment because no
reasonable jury could return a verdict in Evans' favor on her
promissory estoppel claim under Tennessee law.   In Tennessee,
"the doctrine of promissory estoppel is not to be liberally
applied, and its application is limited to exceptional cases

77

where the circumstances border on actual fraud." <u>Chavez v.</u> <u>Broadway Electric Serv. Corp.</u>, 245 S.W.3d 398, 406 (Tenn. Ct. App. 2007) (citation omitted). To succeed on a promissory estoppel claim, plaintiffs must "show (1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." <u>Id.</u> at 404 (citations omitted).

Evans has no evidence that this is an "exceptional case[] where the circumstances border on actual fraud." <u>Id.</u> at 406. As discussed above, Evans admits that she signed an employment application stating that her employment was at will and that no Walgreens agent other than its Chief Executive Officer had authority to change her status as an at will employee. Under those circumstances, no reasonable jury could conclude that Evans reasonably relied on a promise to her detriment. Evans also cannot demonstrate that any promise was unambiguous and not unenforceably vague. As discussed above, Tennessee courts assume that employers retain the right to terminate employees' employment for just cause even where unambiguous promises are made, and a reasonable jury could only conclude that Evans' conduct, which she admitted to Walgreens before her employment was terminated, constitutes just cause for termination. <u>See</u> <u>Maness</u>, 2010 WL 4629614, at *8. Walgreens is entitled to

78

summary judgment on Evans' promissory estoppel claim under Tennessee and North Carolina law. See Pucci, 628 F.3d at 759.

### 12. Negligent Infliction of Emotional Distress

Evans argues that Walgreens is liable for negligent infliction of emotional distress. (See Compl. ¶¶ 81-83; Pl.'s Resp. 20.) She contends that Walgreens "negligently and carelessly inflicted emotional distress" on her. (See Compl. ¶ 82.)

Evans' negligent infliction of emotional distress claim is time-barred under Tennessee's statute of limitations. As discussed above, her alleged injury is to her person because she cannot overcome the presumption that she is an at will employee. See Sudberry, 2008 WL 4466487, at *1, 6, 9. Tennessee's one-year statute of limitations applies. See id. at *9; see also Jackson v. CVS Corp., No. M2009-02220-COA-R3-CV, 2010 WL 3385184, at *4 (Tenn. Ct. App. Aug. 26, 2010). Evans had information that would place a reasonable person on inquiry notice that she might have a cause of action more than one year before she filed an action against Walgreens. For instance, she referred in a March 3, 2008 letter to emotional damage Walgreens' actions had allegedly caused. (See Ex. 6, ECF No. 45-6, at 37.) The discovery rule does not apply. See Estate of Morris, 329 S.W.3d at 783. Evans knew or in the exercise of reasonable care and diligence should have discovered that she

had sustained an injury as a result of Walgreens' allegedly wrongful or tortious conduct more than one year before filing her action. Walgreens is entitled to summary judgment on Evans' negligent infliction of emotional distress claim because it is time-barred under Tennessee's statute of limitations. <u>See</u> <u>Jackson</u>, 2010 WL 3385184, at *4; <u>Sudberry</u>, 2008 WL 4466487, at *1, 6, 9.

Walgreens is also entitled to summary judgment because a reasonable jury could not return a verdict in Evans' favor on her negligent infliction of emotional distress claim. "A successful claim for <u>negligent</u> infliction of emotional distress in Tennessee must include all five elements of standard negligence, as well as expert proof establishing that the plaintiff's emotional distress is 'serious' or 'severe.'" <u>Bonanno v. Faris</u>, No. 2010-02326-COA-R3-CV, 2011 WL 3274121, at *3 (Tenn. Ct. App. Aug. 1, 2011) (quoting <u>Eskin v. Bartree</u>, 262 S.W.3d 727, 735 (Tenn. 2008)). "The five elements of negligence include (1) a duty of care owed [to] the plaintiff [by] the defendant, (2) conduct by the defendant that breaches this duty, (3) an injury or loss, (4) a cause-in-fact connection between the plaintiff's injury or loss and the defendant's conduct, and (5) the existence of proximate or legal cause." <u>Id.</u> (quoting <u>Eskin</u>, 262 S.W.3d at 735 n.19).

Evans has no evidence that Walgreens breached any duty to her, a cause-in-fact connection exists between any injury or loss, or that proximate or legal cause exists in this case. She has not directed the Court to any admissible evidence that she suffered an injury or loss. She has tendered no expert proof. She has not come forward with specific facts showing that there is a genuine issue for trial. Walgreens is entitled to summary judgment on Evans' negligent infliction of emotional distress claim. See Pucci, 628 F.3d at 759.

### 13. Intentional Infliction of Emotional Distress

Evans argues that Walgreens is liable for intentional infliction of emotional distress. (See Compl. ¶¶ 84-86.) That claim is time-barred under Tennessee's statute of limitations. "[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations." Leach v. Taylor, 124 S.W.3d 87, 91 (Tenn. 2004) (citation omitted); see also Sudberry, 2008 WL 4466487, at *1, 6, 9. Evans had information that would place a reasonable person on inquiry notice that she might have a cause of action more than one year before she filed an action against Walgreens. For instance, she referred in a March 3, 2008 letter to emotional damage Walgreens' actions had allegedly caused. (See Ex. 6, ECF No. 45-6, at 37.) The discovery rule does not apply. See Estate of Morris, 329 S.W.3d at 783. Evans knew or in the

exercise of reasonable care and diligence should have discovered that she had sustained an injury as a result of Walgreens' allegedly wrongful or tortious conduct more than one year before filing her action. Walgreens is entitled to summary judgment on Evans' intentional infliction of emotional distress claim because it is time-barred under Tennessee's statute of limitations. See Leach, 124 S.W.3d at 91; Sudberry, 2008 WL 4466487, at *1, 6, 9.

Walgreens is also entitled to summary judgment because a reasonable jury could not return a verdict in Evans' favor on her intentional infliction of emotional distress claim. "The three essential elements to a cause of action for intentional infliction of emotional distress are: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." Bonanno, 2011 WL 3274121, at *3 (citation omitted); accord Rogers v. Louisville Land Co., No. E2010-00991-COA-R3-CV, 2011 WL 2112766, at *3 (Tenn. Ct. App. May 25, 2011).

Evans has no evidence that Walgreens' conduct was so outrageous that it is not tolerated by civilized society. She has not directed the Court to any admissible evidence that she suffered a serious mental injury. She has not come forward with specific facts showing that there is a genuine issue for trial.

82

Therefore, Walgreens is entitled to summary judgment on Evans' intentional infliction of emotional distress claim. See Pucci, 628 F.3d at 759.

### 14.  Request for Attorney's Fees

In Count XIV, Evans requests attorney's fees under 42 U.S.C. § 1988 and any other state or federal law providing for recovery of attorney's fees. (See Compl. ¶ 88.)  She cannot demonstrate that she is entitled to attorney's fees. See, e.g., Chandler v. Vill. of Chagrin Falls, 296 F. App'x 463, 473 (6th Cir. 2008); Toms v. Taft, 338 F.3d 519, 528-30 (6th Cir. 2003); Allemon v. Bair, No. 04-72925, 2005 WL 1684153, at *4 (E.D. Mich. July 15, 2005).  Walgreens is entitled to summary judgment on Evans' request for attorney's fees.

For the foregoing reasons, Walgreens is entitled to summary judgment on all of Evans' claims.  Its motion for summary judgment on Evans' claims is GRANTED.

### B.  Walgreens' Motion for Summary Judgment on its Breach of Contract Counterclaim

Walgreens has moved for summary judgment in its favor on its counterclaim against Evans for breach of contract. (See Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for Breach of Contract 1-2; Mem. in Supp. of Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for Breach of Contract 1-7.) It argues that Evans breached an agreement to repay the

relocation and sign-on bonuses she received because her employment ended before she had completed three years of service as a licensed pharmacist for Walgreens. (See Mem. in Supp. of Counter/Plaintiff's Mot. for Summ. J. as to Countercl. for Breach of Contract 1-7.)

In support of the factual assertion that Evans "was paid $1,500.00 as a relocation incentive payment and $20,000.00 as a sign-on-bonus incentive payment and agreed to repay the funds in the event she did not complete the three year period as a licensed Pharmacist in the Memphis East District," Walgreens cites an affidavit by Tibbe and alleged copies of the agreement. (See Walgreens' Statement of Facts in Supp. of Countercl. ¶ 4.) The alleged agreements contain a provision stating in part that "[i]f Pharmacist does not remain so employed by WALGREENS full-time in the capacity of a registered pharmacist in the designated area for 3 full year(s) of continuous service, the entire amount of the incentive payment, plus a penalty of 8% per year, shall become immediately due and payable upon Pharmacist's ceasing to serve as a full-time registered pharmacist in the designated area (for any reason)." (Pharmacy Relocation Incentive Payment, Ex. 2, ECF No. 44-3; Pharmacy Sign-on-Bonus Incentive Payment, Ex. 3, ECF No. 44-3.) Both forms purport to contain a check in a box at the bottom next to the text, "I understand the above terms of the WALGREEN CO. Pharmacy

84

Incentive Program, and agree to abide by such terms." (Pharmacy Relocation Incentive Payment, Ex. 2, ECF No. 44-3; Pharmacy Sign-on-Bonus Incentive Payment, Ex. 3, ECF No. 44-3.) Walgreens contends that Evans put an electronic check mark in that box. (See Walgreens' Statement of Facts in Supp. of Countercl. ¶ 15.)

Evans denies entering into any agreement with Walgreens to repay the bonuses. She swears in an affidavit that "[t]he first time I saw the alleged written bonus document was during the course of this litigation. I did not sign or acknowledge this agreement." (Aff. of Chandra Evans ¶ 4, ECF No. 63-1; see also Aff. of Chandra Evans ¶ 8, ECF No. 46-1 ("I did not sign the documents that are attached to Defendant's counterclaim.").) She also swears, "Hoover never told me that there was any expectation that any compensation provided to [me] would ever have to be repaid." (Aff. of Chandra Evans ¶ 3, ECF No. 63-1.)

As discussed above, the Court will determine whether Walgreens is entitled to summary judgment on its breach of contract counterclaim under Tennessee, North Carolina, and Illinois law. For a binding contract to be created, Tennessee, North Carolina, and Illinois law require a meeting of the parties' minds in mutual assent to the contract's terms. See Academy Chicago Publishers v. Cheever, 578 N.E.2d 981, 984 (Ill. 1991) ("An enforceable contract must include a meeting of the

85

minds or mutual assent as to the terms of the contract.") (citation omitted); Asset Exchange II, LLC v. First Choice Bank, No. 1-10-3718, 2011 WL 2714225, at *7 (Ill. App. Ct. July 12, 2011) ("The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." (quoting Henderson-Smith & Assocs., Inc. v. Nahamani Family Serv. Ctr., Inc., 752 N.E.2d 33, 43 (Ill. App. Ct. 2001))); McKinnon v. CV Indus., Inc., No. COA10-1105, 2011 WL 2848580, at *4 (N.C. Ct. App. July 19, 2011) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.  For a valid contract to exist there must be 'a meeting of the minds as to all essential terms of the agreement.'") (citations omitted); Staubach Retail Services-Southeast, LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2004) ("A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" (quoting Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001))); Rogers, 2011 WL 2112766, at *5 ("The essential elements of any breach of contract claim include (1) the existence of an enforceable

86

contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. (quoting ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005))); Parnell v. APCOM, Inc., No. M2003-00178-COA-R3-CV, 2004 WL 2964723, at *8 (Tenn. Ct. App. Dec. 21, 2004) ("To establish a claim for breach of contract, Plaintiff must show that a contract existed by establishing that there was a meeting of the minds, mutual assent to the contractual terms, consideration, and that the contractual terms were sufficiently definite.") (citation omitted).

Whether Evans signed, entered into, or agreed to be bound by the alleged agreements is a disputed question of fact inappropriate for resolution on summary judgment. As the Sixth Circuit has explained, "Weighing of the evidence or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party." Keweenaw Bay Indian Cmty. v. Rising, 477 F.3d 881, 886 (6th Cir. 2007) (citation omitted). The evidence about Walgreens' breach of contract counterclaim is susceptible of different interpretations or inferences by the trier of fact. If a jury accepted Evans' account that she did not sign or acknowledge the agreements and only saw them during the course of this litigation, it could reasonably conclude that there was no meeting of the minds between her and Walgreens about

repayment of her bonuses.  By concluding that there was no meeting of the minds, a jury could reasonably conclude that Evans is not liable for breach of contract under Tennessee, North Carolina, or Illinois law.  See, e.g., Academy Chicago Publishers, 578 N.E.2d at 984; McKinnon, 2011 WL 2848580, at *4; Staubach Retail Services-Southeast, 160 S.W.3d at 524.  Because a reasonable jury could conclude that Evans is not liable for breach of contract, Walgreens is not entitled to summary judgment.  See Shakur, 514 F.3d at 890; Calderone, 799 F.2d at 259.  Walgreens' motion for summary judgment on its counterclaim against Evans for breach of contract is DENIED.

> **C.  Evans' Motion for Summary Judgment on Walgreens' Breach of Contract Counterclaim**

Evans has moved for summary judgment on Walgreens' breach of contract counterclaim.  As discussed above, the Court will determine whether Walgreens can survive Evans' motion for summary judgment under Tennessee, North Carolina, and Illinois law.

Under Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract."  Rogers, 2011 WL 2112766, at *5 (citation omitted).  Under North Carolina law, "[t]he elements of a claim for breach

of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." McKinnon, 2011 WL 2848580, at *4 (citation omitted).  Under Illinois law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." Asset Exchange II, 2011 WL 2714225, at *7 (citation omitted).

        As discussed above, whether Evans signed, entered into, or agreed to be bound by the alleged agreements is a disputed question of fact inappropriate for resolution on summary judgment.  If a jury believed Walgreens' account that Evans did sign the alleged agreements, it could reasonably conclude that Evans is liable for breach of contract because Walgreens performed its promises under the agreement and Evans did not repay the bonuses, causing injury to Walgreens.  See Asset Exchange II, 2011 WL 2714225, at *7; McKinnon, 2011 WL 2848580, at *4; Rogers, 2011 WL 2112766, at *5.  Because Walgreens has presented specific facts showing that there is a genuine issue for trial, Evans is not entitled to summary judgment on Walgreens' breach of contract counterclaim.  See Pucci, 628 F.3d at 759.  Evans' motion for summary judgment on Walgreens' counterclaim for breach of contract is DENIED.

        **V.   Conclusion**

89

For the foregoing reasons, Walgreens' Motion for Summary Judgment on Evans' claims is GRANTED. Walgreens' Motion for Summary Judgment on its counterclaim for breach of contract is DENIED. Evans' Motion for Summary Judgment on Walgreens' breach of contract claim is DENIED.

Evans' motion to strike and/or exclude Walgreens' designated expert and accompanying testimony (ECF No. 47) is DENIED AS MOOT. The order referring it to the Magistrate Judge (ECF No. 53) is hereby set aside.

So ordered this 25th day of August, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE